J-S52012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAMAR WILLIAMS, | |
| Appellant | No. 1817 WDA 2014 |

Appeal from the PCRA Order October 29, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0017932-2009

BEFORE:  SHOGAN, OLSON, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 30, 2015**

Appellant, Lamar Williams, appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the facts of this case as follows:

> Briefly, the evidence presented at trial established that on July 30, 2009, narcotics division Detectives Goob and Fallert and Sergeant Snyder were detailed to the North Side of the City of Pittsburgh in an unmarked vehicle when they observed a 2009 Pontiac G6 run a stop sign at the intersection of Federal Street and Lafayette Street.  The detectives began to follow the car, and observed it run another stop sign at the intersection of Federal Street and Perrysville Avenue.  The detectives then activated their lights and the car gave chase, swerving around a PAT bus, crossing a double yellow line and reaching speeds of 60-65 mph in [a] 25 mph zone.  Eventually the car attempted a sharp turn and lost control, striking another vehicle and coming to a stop.  The detectives pulled up to the driver's side of the wrecked Pontiac so that the driver was unable to exit the driver['s] side door of the vehicle.  However, the driver climbed

over the seat, jumped out of the passenger side door and began to run. He was chased by Sgt. Snyder and Detective Goob. During the chase, Sgt. Snyder observed [Appellant] reach into his pocket and toss an object out as he ran. Shortly thereafter, Sgt. Snyder and Det. Goob caught up with [Appellant] and after a short struggle, placed him under arrest. Sgt. Snyder then retrieved the object that [Appellant] had thrown and discovered it to be a wrapped brick containing 250 stamp bags of heroin with a street value of $2500.

PCRA Court Opinion, 4/28/15, at 2-3.

On January 6, 2011, at the conclusion of trial, a jury convicted Appellant of fleeing or attempting to elude a police officer, recklessly endangering another person, possession of a controlled substance with the intent to deliver, and possession of a controlled substance. In addition, the trial judge found Appellant guilty of one count of driving while operating privileges were suspended or revoked, three counts of violating duties at a stop sign, and one count of reckless driving. On April 5, 2011, the trial court sentenced Appellant to serve an aggregate term of incarceration of five to ten years.

Appellant filed post-sentence motions, which were denied. On July 6, 2012, this Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on July 2, 2013. *Commonwealth v. Williams*, 1558 WDA 2011, 55 A.3d 125 (Pa. Super. filed July 6, 2012) (unpublished memorandum), *appeal denied*, 69 A.3d 602 (Pa. 2013).

On August 19, 2013, Appellant filed a timely *pro se* PCRA petition. PCRA counsel was appointed and filed an amended PCRA petition. The PCRA court held an evidentiary hearing on June 25, 2014. On October 29, 2014, the PCRA court denied Appellant's PCRA petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the trial court erred in finding that trial counsel's failure to request the No Adverse Inference jury instruction was harmless when the record shows that [Appellant] was prejudiced by Attorney Rabner's error?

2. Whether the trial court erred in finding trial counsel effective when the record shows that Attorney Rabner presented testimony from a witness that he failed to adequately interview, whose testimony damaged the defense?

Appellant's Brief at 3.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011) (citing **Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Id**. (citing **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

We observe that each of Appellant's claims challenges the effective assistance of his trial counsel. In order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001).

We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting *Commonwealth v. Miller*, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has long defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Commonwealth ex rel. Washington v. Maroney*, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citing *Commonwealth v. Sneed*, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). We are bound by the PCRA court's credibility determinations where there is support for them in the record. *Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)).

Furthermore, claims of ineffective assistance of counsel are not self-proving. *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002).

"[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." *Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004). "[A]n underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." *Commonwealth v. Bracey*, 795 A.2d 935, 940 n.4 (Pa. 2001).

In his first issue on appeal, Appellant argues that trial counsel was ineffective for failing to request a "no adverse inference" jury instruction. Appellant's Brief at 10-12. Appellant contends that trial counsel was obligated to insure that the jury acted properly during deliberations by requesting the instruction and that Appellant's right to remain silent was upheld.

"A 'no adverse inference' instruction directs the jury that they may not draw any adverse inference from the defendant's failure to testify in his own defense, because the defendant has the absolute right not to testify if he so chooses." *Commonwealth v. Stanley*, 830 A.2d 1021, 1022 n.1 (Pa. Super. 2003). "Pursuant to both the Fifth Amendment to the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution, a criminal defendant is entitled to receive, upon timely request, a specific instruction which informs the jury that it may draw no adverse inference

from the fact that the defendant did not testify at trial." ***Commonwealth v. Khamphouseane***, 642 A.2d 490, 497 (Pa. Super. 1994). As our Supreme Court explained in ***Commonwealth v. Thompson***, 674 A.2d 217 (Pa. 1996), the "no adverse inference" instruction must be given unless the defendant expressly waives his right to the instruction in an on-the-record colloquy. ***Id***. at 221.

More recently, in ***Commonwealth v. Perez***, 103 A.3d 344 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015), this Court reiterated that pursuant to ***Stanley***, "a failure to request a colloquy with respect to waiver of the instruction . . . cannot constitute prejudice *per se* . . . ." ***Perez***, 103 A.3d at 349. Therefore, the "standard three-part ineffectiveness test should govern the analysis . . . ." ***Id***. Furthermore, "[a]s this claim is premised upon trial counsel's inaction, [the] appellant must establish that he **suffered prejudice as a result of counsel's failure to act to such a degree that absent counsel's error the outcome of the verdict would have been different**." ***Thompson***, 674 A.2d at 221 (emphasis added).

Our review of the record reflects that there was no on-the-record colloquy of Appellant expressly waiving the no adverse inference charge. Appellant's trial counsel, Attorney Rabner, testified at the PCRA hearing that he did not request the "no adverse inference" instruction, and that it was an apparent oversight on his part. Specifically, the following transpired at the PCRA hearing:

[PCRA COUNSEL]: Did [Appellant] testify during the trial?

[TRIAL COUNSEL]: He did not.

[PCRA COUNSEL]: Are you familiar through your practice with the no adverse inference jury instruction?

[TRIAL COUNSEL]: I am familiar with it.

[PCRA COUNSEL]: Before this morning, did you have an opportunity to review the transcript of those proceedings?

[TRIAL COUNSEL]: At the last time this was listed for Court I did, in fact, review the bulk of the transcript. Yes.

[PCRA COUNSEL]: Based on that review, is it your understanding that you requested the no adverse inference jury instruction?

[TRIAL COUNSEL]: After reading it, I absolutely did not ask for the jury instruction.

[PCRA COUNSEL]: Do you have any reason today to dispute the accuracy of that transcript?

[TRIAL COUNSEL]: No. It clearly seems that that was an oversight by me.

N.T., 6/25/14, at 5-6.

Thus, by trial counsel's own admission, he failed to request a "no adverse inference" charge be given to the jury. Interestingly, trial counsel alludes to the fact that the "no adverse inference" instruction would have been requested, but for his oversight of the matter. Assuming for the sake of argument that trial counsel did not, in fact, request a "no adverse inference" charge or appropriate colloquy on the record, we presume that Appellant's claim of ineffective assistance has arguable merit. *Thompson*. However, such oversight by trial counsel does not amount to prejudice *per*

*se*. Therefore, our inquiry is not at an end. Rather, Appellant must also establish that trial counsel's failure to request a "no adverse inference" charge prejudiced him to such a degree that the adjudication of guilt was unreliable. ***See Commonwealth v. Howard***, 645 A.2d 1300 (Pa. 1994) (holding that defense counsel's failure to request a "no adverse inference" instruction was not *per se* ineffective and that the  defendant had to establish that he was prejudiced by the fact that the charge was not given).

Our review of the certified record reflects that, although the trial court did not give a "no adverse inference" instruction in its closing charge to the jury, it did unequivocally instruct the jury at the beginning of Appellant's trial that they may not draw any adverse inference against Appellant for failing to testify, as follows:

> THE COURT: It is very important at that juncture in the trial that you have a complete understanding that, in our criminal justice system, a person accused of a crime has absolutely no obligation whatsoever to offer any evidence on his or her own behalf.
>
> A person accused of a crime is presumed to be innocent, and the sole burden of proof lies with the Commonwealth of Pennsylvania to prove that person guilty beyond a reasonable doubt with regard to each and every element of each and every crime charged.
>
> **Therefore, if the Defendant does not present a defense or testify, you must understand that, as the fact-finders in this case, you must not draw any adverse inference whatsoever against the Defendant.**
>
> The reason is simple: Anyone accused of a crime is presumed to be innocent.  The sole burden of proof rests with the Commonwealth of Pennsylvania to prove that person guilty

beyond a reasonable doubt. A person accused of a crime need do nothing.

N.T., 1/5-6/11, at 11-12 (emphasis added).

Furthermore, while the trial court did not give the "no adverse inference" instruction at the time of its closing instructions to the jury, it did instruct the jury that the Commonwealth has the burden of proof, and Appellant is not required to present any evidence in his defense, as follows:

> The fundamental principle of our criminal justice system is that a person accused of a crime, the Defendant, is presumed to be innocent. The mere fact that the Defendant was arrested and accused of a crime is not any evidence against the Defendant.
>
> In addition, there is no inference of guilt created by the fact that there was a criminal information, criminal complaint, or even a trial. Furthermore, the Defendant is presumed innocent throughout the trial unless and until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth of Pennsylvania has proven the Defendant guilty beyond a reasonable doubt.
>
> It is not the Defendant's burden to prove the Defendant is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime or crimes charged beyond a reasonable doubt.
>
> **The person accused of a crime is not required to present evidence or prove anything in his or her own defense.** If the Commonwealth fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth does prove beyond a reasonable doubt that the Defendant is guilty, then your verdict should be guilty.

N.T., 1/5-6/11, at 232-233 (emphasis added).

Thus, although not presented as a "no adverse inference" charge at the end of trial, the record reveals that the trial court gave sufficient

instructions to the jury equivalent to the "no adverse inference" charge. "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 567 Pa. 272, 289, 786 A.2d 961, 971 (2001); *see also Commonwealth v. O'Hannon*, 732 A.2d 1193, 1196 (Pa. 1999) (stating that "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions"). There is no evidence that the jury ignored the instructions, and "absent evidence to the contrary, the jury is presumed to have followed the court's instructions." *O'Hannon*, 732 A.2d at 1196. Accordingly, we conclude Appellant has failed to demonstrate that he suffered prejudice from counsel's failure to request a "no adverse inference" instruction in the closing jury charge.

Furthermore, Appellant has failed to establish the prejudice prong of the ineffective assistance of counsel test because, even if a "no adverse inference" instruction had been given, there is no reasonable probability that the outcome of the proceedings would have been different. This Court determined in Appellant's direct appeal that there was sufficient evidence to uphold Appellant's various convictions. *Commonwealth v. Williams*, 1558 WDA 2011, 55 A.3d 125 (Pa. Super. filed July 6, 2012) (unpublished memorandum). It is unlikely that a "no adverse inference" instruction would have changed the outcome of the trial. Although trial counsel should have requested a "no adverse inference" colloquy and "no adverse inference" instruction, Appellant has failed to demonstrate how he was prejudiced by

counsel's failure to request that the trial court give the instruction at the end of trial.

In summary, in the context of the trial court's precautionary "no adverse inference" instruction and the sufficiency of the evidence presented at trial, we cannot say that the jury would have been so swayed by such an instruction at the end of trial that the verdict would have been different. Therefore, Appellant has failed to demonstrate prejudice, and his claim of ineffective assistance in this regard fails.

Appellant next argues that trial counsel was ineffective for failing to adequately interview a defense witness. Appellant's Brief at 12-13. Specifically, Appellant claims that defense counsel did not adequately interview Mr. Morris Richardson, the co-director of a work-release program with which Appellant had been involved at the time of the incident.

In addressing Appellant's claim, the PCRA court offered the following analysis:

*2. Failure to Interview Witness*

Next, [Appellant] argues that trial counsel was ineffective for "presenting testimony from a witness that he failed to adequately interview, whose testimony damaged the defense[."] A review of the record reveals that this claim is meritless.

At trial, [Appellant] presented the testimony of Morris Richardson, the Work Release Program Coordinator at the Renewal Center, where [Appellant] was living at the time of the instant offenses. Mr. Richardson testified regarding the conditions of [Appellant's] work release from the facility and the details and hours of his employment with Two Cousins Cleaning. Mr. Richardson testified that [Appellant] passed random checks

with his employer and never failed to make his curfew except on the night he was arrested.

At the [PCRA] hearing, [trial counsel] testified that Mr. Richardson's testimony was intended to coordinate with that of another witness [trial counsel] intended to call:

Q. [PCRA COUNSEL]: During the course of the trial did you present testimony from a man named Norris [sic] Richardson?

A. [TRIAL COUNSEL]: If I recall, that was the fellow who was in the halfway house who was in charge of people who leave the halfway house to work assignments.

Q. What was the purpose of Mr. Richardson's testimony during the trial?

A. His testimony was largely intended to basically dovetail with a witness that my client had guided me towards who was supposed to validate that he, not [Appellant], was driving at the time of the collision. So their testimony was to be integrated as far as I understood our theory of the case.

Q. Did the other witness appear to testify?

A. What happened is the witness [from] Renewal testified first. Then there was a break.

[The Assistant District Attorney] brought to our attention that the witness who had told me that he was driving the car was, in fact, in a juvenile facility and had lied to me.

Once we brought that to the - well, [the Assistant District Attorney] brought it to my attention. We then brought it to the Judge's attention. At that point I ceased to have any desire to call him for basically a fraudulent, seemingly, witness.

Q. Focusing on Mr. Richardson, the witness who did testify.

A. Yes.

Q. Did you conduct an interview of that witness before trial?

A. I know that I subpoenaed him. I know that I knew he was coming. I knew the gist of what he was saying.

Can I recall the specific interview? No. But I believe I was aware of him and talked to him and knew generally what he would say. He testified consistently with what I thought he would testify to.

Q. Can you tell us where the interview took place then with this witness? Was it here in the Court House [sic] before trial?

A. I have no independent recollection of where I spoke to him. But I would never present a witness blindly on the witness stand without having spoken to him either on the phone, in the hall or a combination thereof. He would not have been somebody to come to my office. I certainly could have gone to the Renewal. But it probably would have been discussions and then verification of the discussions in the hallway setting.

([N.T., 6/25/14, at] p. 6-8).

Contrary to [Appellant's] argument, there is no indication anywhere on the record that [trial counsel] failed to adequately interview Mr. Richardson prior to his testimony. [Trial counsel] testified that although he could not recall the specifics of the interview, he did speak with Mr. Richardson prior to his testimony and Mr. Richardson testified as expected.

Moreover, this Court can discern nothing damaging in Mr. Richardson's testimony. Mr. Richardson testified that [Appellant] appeared for work as scheduled and never missed curfew. Presumably, this testimony was intended to show that [Appellant] did not have time to be involved in drug dealing, and to that extent it was positive testimony. Insofar as this

- 14 -

testimony was clearly not damaging to [Appellant], there is no argument that counsel was ineffective for failing to properly interview Mr. Richardson prior to trial. This claim is meritless.

PCRA Court Opinion, 4/28/15, at 6-8. In light of the fact that trial counsel testified that he did interview the defense witness, we agree with the PCRA court that there is no merit to Appellant's allegations pertaining to this claim of trial counsel ineffective assistance.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015