J-S52039-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DERRICK E. SPIVEY, | : | |
| | : | |
| Appellant | : | No. 3105 EDA 2015 |

Appeal from the PCRA Order September 14, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003401-2009

BEFORE:    FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 01, 2016**

Derrick E. Spivey (Appellant) appeals from the September 14, 2015 order which dismissed without a hearing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm in part, reverse in part, and remand for further proceedings consistent with this memorandum.

On December 6, 2010, following a jury trial, Appellant was convicted of, *inter alia*, first-degree murder for the death of Marvin Hudson, and was sentenced to life imprisonment.  This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal.  ***Commonwealth v. Spivey***, 55 A.3d 122 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 377 EAL 2012 (Pa. December 19, 2012).

*Retired Senior Judge assigned to the Superior Court.

Appellant, through privately-retained counsel, timely filed a PCRA petition on December 16, 2013, and a supplement thereto on February 17, 2015. The PCRA court issued notice of its intent to dismiss the petition without a hearing on August 4, 2015. Appellant filed no response, and the PCRA court dismissed the petition by order of September 14, 2015. Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant states four questions for our review, which we have re-numbered for ease of disposition:

I.     Was trial counsel ineffective because he failed to object to the introduction of testimony from a medical examiner who did not perform the autopsy and who testified as a replacement for the medical examiner who did perform the autopsy?

II.    Was trial counsel ineffective because he failed to object to the court's instructions on "demeanor evidence"?

III.   Was trial counsel ineffective because he failed to object to the court's final charge in which it defined first degree murder as not requiring "planning or previous thought or any particular length of time"?

IV.    Was trial counsel ineffective for failing to move for a mistrial when the Commonwealth made it clear that not only Karefe Cover identified Appellant as the shooter but that Rahman ("Rocky") Isaac also identified him as the shooter?

Appellant's Brief at 4 (unnecessary capitalization and PCRA court answers omitted).

We begin with the applicable legal principles.

Our standard of review of a trial court order granting or denying relief under the PCRA requires us to determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Perez*, 103 A.3d 344, 347 (Pa. Super. 2014) (internal citation and quotation marks omitted).

Appellant presents claims of ineffective assistance of counsel.

[I]n order to obtain relief based on [an ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

Trial counsel is presumed to be effective, and a PCRA petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

*Commonwealth v. Steckley*, 128 A.3d 826, 831 (Pa. Super. 2015) (internal citations omitted).

With his first claim, Appellant asserts that counsel was ineffective in not objecting when Dr. Lieberman, a medical examiner other than the one who performed the autopsy of Marvin Hudson, testified at trial as to Mr. Hudson's cause of death. Appellant's Brief at 18-20. Appellant claims that, because Dr. Lieberman testified as to the conclusions and opinions of Dr.

Preston, the doctor who had performed the autopsy, Appellant's Sixth Amendment right to confront Dr. Preston was violated. *Id.* at 20-25.

"Experts may offer testimony based on the reports of others. In homicide cases, pathologists may base their opinions on facts from autopsy reports prepared by others." *Commonwealth v. Mitchell*, 570 A.2d 532, 534 (Pa. Super. 1990) (cited with approval in *Commonwealth v. Fletcher*, 896 A.2d 508, 510 (Pa. 2006)).

The PCRA court offered the following explanation for its rejection of Appellant's claim.

> Dr. Lieberman testified that in preparation for [Appellant's] trial, he reviewed Dr. Preston's notes, report, and photographs from the autopsy of the decedent. He also conducted an independent observation of the clothing the decedent was wearing at the time of the shooting. Based on his review, Dr. Lieberman rendered his own independent expert opinion as to the cause and manner of the decedent's death. He was then cross-examined as to his expert opinion. Since Dr. Lieberman came to an independent opinion and was cross-examined as to his opinion, [Appellant's] claim is without merit.

Trial Court Opinion, 12/22/2015, at 5 (citation omitted).

We find this Court's decision in *Commonwealth v. Buford*, 101 A.3d 1182 (Pa. Super. 2014), a case also involving Dr. Lieberman testifying with the use of another doctor's autopsy report, instructive. In that case, Buford made the same argument as Appellant:

> Herein, Dr. Lieberman was called at trial as an expert in forensic pathology. He was called as a witness due to the fact that Dr. Hunt, the medical examiner who performed the autopsy was no longer employed by the Medical Examiner's Office in Philadelphia

- 4 -

and it was claimed that [Dr. Hunt] was not available to testify. Dr. Lieberman testified that he reviewed the file. Dr. Lieberman apparently agreed with the findings contained in Dr. Hunt's report.

* * *

Dr. Lieberman's testimony was essentially hearsay. The admission of inadmissible hearsay must always equate with the denial of the right of confrontation. The fact that Dr. Lieberman was qualified and testified as an expert in forensic pathology does not cure the denial of [Buford's] right to confront Dr. Hunt.

*Id.* at 1197–98. This Court rejected Buford's claim based upon the following analysis of the trial court in that case:

[Buford] challenges the testimony of Dr. Lieberman because he did not conduct the actual autopsy. The autopsy was conducted by former Medical Examiner, Dr. Hunt, who by the time of trial was with the Riverside, California Medical Examiner's Office. Dr. Lieberman, who at the time of trial was a Philadelphia Medical Examiner for 22 years, testified that prior to his testimony he reviewed Dr. Hunt's complete report, the photographs taken during the autopsy, the actual clothing worn by the decedent and other documents contained in the Medical Examiner's file. Contrary to [Buford's] assertion, the record is clear that Dr. Lieberman did not simply recite the opinion of Dr. Hunt. His testimony was based upon his own conclusions after his own independent review of the file. …

*Id.* at 1198 (citations omitted).

Because **Buford** is not materially distinguishable from the instant case, we conclude that the trial court properly held that Appellant's claim lacked merit. Further, even if some of Dr. Lieberman's testimony (*i.e.*, his recitation of some of Dr. Preston's findings and conclusions) was inadmissible hearsay, Appellant fails to convince us that any prejudice resulted. Appellant claims that it was "highly prejudicial" because "the

Commonwealth failed to prove an element of the crime of murder with valid evidence." Appellant's Brief at 27. However, (1) the cause and fact of Hudson's death was not disputed at trial, and (2) Dr. Lieberman's testimony of his independent observations, *sans* reference to Dr. Preston's opinions, was sufficient to establish that Hudson was dead, and that he died of a gunshot wound. Accordingly, Appellant cannot establish that the outcome of the proceeding would have been different if the trial court excluded all references to the opinions of Dr. Preston stated in the autopsy report. Appellant's second issue warrants no relief from this Court.

With his next two issues, Appellant claims that trial counsel was ineffective in failing to object to two of the trial court's jury instructions. In considering these claims, we bear in mind that

> [w]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014) (quoting ***Commonwealth v. Trippett***, 932 A.2d 188, 200 (Pa. Super. 2007)).

First, Appellant contends that counsel should have objected to the trial court's jury instruction regarding credibility determinations. Appellant's Brief

at 28-34. In so doing, Appellant points to select portions of the following instruction:

> Credibility, we talked about that. I think I described that for you in great detail yesterday.[1] You may say how am I qualified to make credibility determinations? Because that's [what] your job is. You do it every day in your life and that's how you got so far in life to be sitting before me today. Co-workers, children, friends, spouses, they come to you and tell you a story about how something happened. You have to decide, [do I] believe this person or not? Would I rely on what this person is telling me in making an important decision. How do you do that? You look them in the eye when they speak to you. You look at their body language, their demeanor, you study all that. You listen to their words. Do their words sound reasonable, rational, plausible or do they sound ridiculous to you. Or maybe their words sound not right, so they you talk to other people involved in the incident and get their version. And then in the end you make a credibility determination. So each and every one of you do that everyday in your life. They are the same skills you are called upon to use today.

N.T., 12/1/2010, at 25-26.

Appellant states that the trial court "invited the jury to make credibility findings which could easily have led to a conviction based on looking the witness 'in the eye,' studying the 'body language' of the witness and his or her 'demeanor.'" *Id.* at 28. Appellant argues that because "[n]o standards were given the jury on how to make these determinations or on how to make such judgments," *id.*, he was deprived of due process based upon unconstitutionally vague instructions. *Id.* at 34.

---

[1] The trial court addressed many of these concepts regarding credibility determinations with the prospective jurors prior to jury selection. N.T., 11/30/2010, at 23-24.

We are utterly unpersuaded by Appellant's argument. The instruction as a whole merely advises the jury to use familiar techniques to judge whether a declarant is being truthful; it does not order them to perform some new, undefined form of evaluating of a speaker to discern truthfulness. Further, Appellant's bald speculation that the jury could have convicted him based upon this instruction falls far short of establishing that he suffered prejudice. **Commonwealth v. Pursell**, 724 A.2d 293, 311 (Pa. 1999) ("Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different."). The issue is meritless.

Appellant also takes issue with counsel's failure to object to the trial court's defining "first degree murder as not requiring planning or previous thought or any particular length of time.'" Appellant's Brief at 35-43. Appellant contends that the trial court's instruction "collapsed all of the elements of first[-]degree murder into the concept of specific intent to kill" by stating that the intent to kill is "all that is necessary" for a conviction. **Id.** at 36.

The trial court's instruction was as follows, in relevant part:

> … Before defining each of these crimes, I will tell you about malice which is an element of murder….

A person who kills must act with malice to be guilty of any degree of murder. The word malice as I am using it has a special legal meaning. It does not mean simply hatred, spite or ill will. Malice is a shorthand way of referring to any -- in our case, two different mental states that the law regards as being bad enough to make a killing murder. The type of malice differs for each degree of murder. Thus for murder of the first degree, a killing is with malice if the perpetrator acts with first an intent to kill. Or as I will explain later in my definition of first-degree murder, the killing is willful, deliberate and premeditated.

* * *

First-degree murder. The defendant has been charged with the offense of first-degree murder. First-degree murder is a murder in which the perpetrator has the specific intent to kill. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt. First, that Marvin Hudson is dead. Second, that the defendant … killed him.

… And third, that the defendant did so with the specific intent to kill and with malice.

A person has the specific intent to kill if he has a fully formed intent to kill and is conscious of his own intention. As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice. Stated differently, a killing is with specific intent to kill if it is willful, deliberate and premeditated. The specific intent to kill including the premeditation needed for first-degree murder does not require planning or previous thought of any particular length of time. It can occur quickly. All that is necessary is that there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention. When deciding whether the defendant had the specific intent to kill, you should consider all the evidence regarding his words and conduct and the attending circumstances that may show his state of mind.

N.T., 12/3/2010, at 137-38, 143-44.

The trial court's instruction accurately states the law. ***See***, ***e.g.***, ***Commonwealth v. Cruz***, 919 A.2d 279, 281 (Pa. Super. 2007) ("A defendant is guilty of first[-]degree murder when, with the specific intent to kill, he causes the death of another person."). Moreover, it tracks exactly the language of the suggested standard jury instructions, which are as follows in pertinent part.

> 2.     Before defining each of these crimes, I will tell you about malice, which is an element of murder but not of manslaughter. A person who kills must act with malice to be guilty of any degree of murder. The word "malice," as I am using it, has a special legal meaning. It does not mean simply hatred, spite, or ill-will. Malice is a shorthand way of referring to any of three different mental states that the law regards as being bad enough to make a killing murder. The type of malice differs for each degree of murder.

> 3.     Thus, for murder of the first degree, a killing is with malice if the perpetrator acts with first, an intent to kill, or as I will explain later in my definition of first-degree murder, the killing is willful, deliberate, and premeditated.

> * * *

> 1.     The defendant has been charged with the offense of first-degree murder. First-degree murder is a murder in which the perpetrator has the specific intent to kill. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:

> > First, that [*name of victim*] is dead;

> > Second, that the defendant killed [him] [her]; and

> > Third, that the defendant did so with the specific intent to kill and with malice.

2.      A person has the specific intent to kill if he or she has a fully formed intent to kill and is conscious of his or her own intention.  As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice [provided that it is also without [circumstances reducing the killing to voluntary manslaughter] [or] [any lawful justification or excuse]].

[3.     Stated differently, a killing is with specific intent to kill if it is [willful, deliberate, and premeditated] [by means of poison] [by lying in wait].]

[4.     The specific intent to kill [including the premeditation] needed for first-degree murder does not require planning or previous thought or any particular length of time.  It can occur quickly.  All that is necessary is that there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention.]

Pa. S.S.J.I. (Crim) §§  15.2501A, 15.2505A (brackets in original).

Accordingly, Appellant's counsel was not ineffective in failing to object to the trial court's instructions on malice and first-degree murder. ***Commonwealth v. Trivigno***, 750 A.2d 243, 252-53 (Pa. 2000) (holding that even if standard suggested jury instruction were later to be found improper, counsel could be deemed ineffective in failing to anticipate the change in the law).

Finally, Appellant claims that trial counsel rendered ineffective assistance in failing to move for a mistrial during the Commonwealth's examination of police detective James Pitts.

We begin by noting that "[m]istrials should be granted only when an incident is of such a nature that its unavoidable effect is to deprive appellant

of a fair trial." ***Commonwealth v. Johnson***, 815 A.2d 563, 576 (Pa. 2002).

In the instant case, Detective Pitts testified about his investigation into the shooting death of Marvin Hudson, including his interview of Karefe Cover, who identified Appellant as Hudson's shooter and who testified to that identification at Appellant's trial. In addition, Detective Pitts offered the following testimony after relating that Rahman "Rocky" Isaac also came in for an interview after Detective Pitts interviewed Mr. Cover:

> Q.   Now, when did you get an arrest warrant then for [Appellant]?
>
> A.   It was shortly after the second interview, but I have to look at the actual date on it.
>
> * * *
>
> THE COURT:     Which second interview?
>
> A.   I'm sorry. I'm talking about two witnesses. The interview of Mr. Isaac, that would be the second identifier[]. We need two identifiers in order to get a warrant.
>
> [Appellant's counsel]:   Objection.
>
> THE COURT:     Sustained.

N.T., 12/2/2010, at 38-39.

Appellant contends that trial counsel was ineffective in failing to move for a mistrial after the trial court sustained his objection to the inadmissible hearsay testimony that Mr. Isaac also identified Appellant as the shooter.

Appellant's Brief at 10-12. He further claims that he was prejudiced because Mr. Cover's identification testimony had been impeached earlier in the trial, and "[a]bsent the fortification and bolstering occasioned by the Isaac identification, Karefe Cover's identification was woefully insufficient to support the conviction." *Id.* at 17.

The PCRA court opined that trial counsel's "[m]oving for a mistrial would have been fruitless." PCRA Court Opinion, 12/22/2015, at 9 n.3.[2] The court explained: "Here, Detective Pitts' testimony was not so prejudicial as to warrant the extreme remedy of a mistrial, and the [trial c]ourt instructed the jury that they are to disregard any testimony from the witness after an objection is sustained." *Id.* Further, the PCRA court stated, "given the ample evidence the Commonwealth presented permitting the jury to conclude [Appellant] was the individual who shot the decedent, [Appellant] is unable to show prejudice based on Detective Pitts' isolated and ambiguous reference to the need for 'two identifiers' to obtain an arrest warrant." *Id.* at 10. Thus, the PCRA court concluded that Appellant was unable to

---

[2] The lower court's indication that it would have denied a motion for a mistrial had counsel made one does not necessarily defeat Appellant's ability to establish prejudice. *See Commonwealth v. Hanible*, 30 A.3d 426, 443 (Pa. 2011) ("To establish prejudice, the petitioner must show that there is a reasonable probability that the trial court would have granted a motion … **or that counsel would have been successful had he raised such issue on direct appeal**." (emphasis added; internal quotation marks and citation omitted)).

establish that the claim has arguable merit or that he suffered prejudice as a result of counsel's failure to seek a mistrial.

We disagree with the PCRA court's conclusions. The statements of Detective Pitts are not ambiguous: he clearly indicated that the reason they arrested Appellant is because both Mr. Cover and Mr. Isaac identified Appellant as the man who shot Marvin Hudson. Nor was this the only suggestion the jury heard that more than one person identified Appellant: the Commonwealth in its opening to the jury used the plural in discussing Appellant's identifiers. N.T., 12/1/2010, at 34 ("[Mr. Cover] then told the police that when they came out as they were getting in the car they started to hear the shots and looked up, **they** saw [Appellant]. **They** knew him as D. … And **they** said all **we** know is D start[ed] shooting at us.") (emphasis added). Furthermore, the trial court's instruction to the jury to ignore answers when objections are sustained was given as a general instruction before any witness testified, N.T., 12/1/2010, at 27-28, not as a curative instruction following its sustaining of the objection to Detective Pitts' statement that Mr. Issac was the second person to identify Appellant as the shooter.

Furthermore, contrary to the PCRA court's determination, our review of the record reveals that the Commonwealth's identification evidence was far from abundant. The Commonwealth did offer much evidence to prove that Marvin Hudson was murdered while sitting in a vehicle by a shooter who

stood on the opposite side of the street. However, the only evidence the Commonwealth proffered to tie Appellant to the murder was the testimony of Mr. Cover, who testified, consistent with his statement to the police, that Appellant was the shooter. Mr. Cover indicated that he had known Appellant for a couple of years as a person who hung out on Wister Street, but he had never spoken to him or had any problems with him. N.T., 12/1/2010, at 116-17. Mr. Cover repeatedly stated, on both direct and cross examination, that the reason that he knew Appellant was the person who shot Hudson is because Appellant has a green goblin tattoo on his neck and Mr. Cover saw that tattoo on the shooter. *Id.* at 115, 121, 159-60. He was adamant that the person who shot Marvin Hudson had a green goblin tattoo. *Id.* at 183. During Mr. Cover's testimony, Appellant was asked to unbutton his shirt and show his neck, and the record reflects that Appellant complied. *Id.* at 159. While no one stated for the record exactly what Appellant's compliance revealed, it is implicit from the further proceedings that Appellant does not have a tattoo on his neck meeting Mr. Cover's description.

The Commonwealth confirmed that Mr. Cover never mentioned the tattoo when he identified Appellant to police, and that the photo of Appellant Mr. Cover selected for police as that of the shooter did not display a tattoo. *Id.* at 174-75. The Commonwealth also introduced evidence that Mr. Cover may have had a motive to sabotage his identification of Appellant. *Id.* at 180. Nonetheless, the Commonwealth's only evidence identifying Appellant

as the man who murdered Marvin Hudson clearly and repeatedly had been called into doubt.

On this evidence, we hold that there is arguable merit to Appellant's claim that counsel was ineffective for failing to seek a mistrial after Detective Pitts stated that a second person identified Appellant as Marvin Hudson's shooter. "[W]hen an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the [PCRA court] to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing." *Commonwealth v. Walls*, 993 A.2d 289, 296–97 (Pa. Super. 2010).

Accordingly, we reverse the PCRA court's order to the extent that it dismissed Appellant's claim regarding Detective Pitts' statement and we remand for a hearing on that claim alone. We affirm the dismissal of Appellant's other claims.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>11/1/2016</u>