J-S55018-14

2014 PA Super 247

COMMONWEALTH OF PENNSYLVANIA,   :    IN THE SUPERIOR COURT OF
                       :        PENNSYLVANIA
           Appellee      :
                       :
      v.              :
                       :
GUILLMO (GUILLERMO) PEREZ,   :
                       :
          Appellant     :     No. 3187 EDA 2013

Appeal from the PCRA Order Entered November 8, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at Nos. CP-51-CR-0802241-2001
and CP-51-CR-1001271-2001.

BEFORE: BOWES, SHOGAN and OTT, JJ.

OPINION BY SHOGAN, J.:                 Filed: October 29, 2014

Appellant, Guillmo (Guillermo) Perez, appeals from the order denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.

The facts and procedural history of the underlying criminal matter were summarized by another panel of this Court, as follows:

> Mr. Levaughn Nesbitt testified he had been in an abandoned station wagon in a lot on Firth and Ninth Streets in Philadelphia with Appellant and the victim on June 1, 2001, just before 11:00 p.m. N.T., 4/15/03, at 103-04. The victim sat at the driver's seat, Appellant sat in the front passenger seat and Mr. Nesbitt sat in the back seat on the driver's side. *Id*. at 105. Mr. Nesbitt was smoking marijuana in the vehicle and shared some with the others, who had been smoking a "wet" [a marijuana cigar soaked in embalming fluid] when he got in the car. *Id*. at 106-107. Mr. Nesbitt witnessed Appellant pull a

black gun "out of nowhere," hold it in his hand and state he was "going to use it," after which the victim asked him to put the gun away, and Appellant complied. *Id*. at 107-108, 121. Mr. Nesbitt asked the victim to accompany him to the latter's grandmother's home to watch the remaining portion of a 76ers basketball game. The victim stated he would go there after he finished his "wet." *Id*. at 108.

Ms. Shakira Morse, the victim's sister, testified she was visiting her grandmother's home on June 1, 2001, when Appellant came to the door and asked to speak to the victim. *Id*. at 125-126. Appellant asked the victim for something, and the victim told Appellant to get it from "Roskoe." *Id*. at 126. Appellant left and returned in about five minutes. *Id*. at 126. The men spoke again after which Appellant left the home, and the victim followed about five minutes later. *Id*. at 126-127. After approximately ten minutes had passed, Mr. Nesbitt came to watch the basketball game, and about fifteen minutes later, Ms. Morse heard gunshots. *Id*. at 127.

Mr. Ismael Roman, the block captain, testified he lived at 821 East Firth Street, and on the evening of June 1, 2001, he was home with his family when he heard one gunshot followed shortly thereafter by two more. *Id*. at 68-69. When Mr. Roman looked out his window, he saw Appellant trying to pull the gun's slide forward to fire it while crossing back and forth in the middle of the street in front of Mr. Roman's car. *Id*. at 72. He observed Appellant's second shot hit the pavement and the third hit Mr. Roman's automobile. Appellant then walked toward a vacant, littered lot located behind the houses in the 2500 Block of North Ninth Street. *Id*. at 68-76.

Ms. Regina Hunter testified on the date of the incident she lived in a home at 2509 North Ninth Street. While she was watching the 76ers basketball game, Appellant broke through the locked back door of her home and tore apart her kitchen. He was holding something, but Ms. Hunter could not positively identify the object. *Id*. at 89-92. He was speaking like he was "crazy," though he complied with Ms. Hunter's order to leave through the front door. *Id*. at 92, 98.

Detective Timothy Bass testified that on the evening of June 1, 2001 he was sent to the 800 Block of West Firth Street,

- 2 -

where he recovered two, fired cartridge casings and a hand gun among refuse in a vacant lot. *Id*. at 37-39. He also recovered another cartridge casing from an abandoned, brown Chevrolet station wagon. *Id*. at 35. The passenger front window had been shattered and both the driver's door and front passenger doors were ajar. *Id.* at 46-48.

Officer Demetrius Heggs testified he was in uniform and responded to a call at Ninth and Firth Streets on June 1, 2001. *Id*. at 131-132. Officer Heggs proceeded southbound on Ninth Street and came to the corner of Ninth and West Cumberland Streets where Mr. Roman provided him with a brief description of a male he saw firing a gun. *Id*. at 132-133. He observed a commotion at Appellant's grandmother's home; she explained he had burst in and gone upstairs. *Id*. at 133-134. Officer Heggs noticed Appellant walking down the stairs with a "large wound on his head." *Id*. at 135-136. Appellant was speaking unintelligibly and appeared to be under the influence of drugs. *Id*. at 136-137, 142. Appellant walked out of the front door and traveled on foot eastbound on Cumberland Street from Ninth Street toward Eighth Street. *Id*. at 137. Officer Heggs called for backup as he followed Appellant in his patrol car. *Id*. Officer Heggs found himself at the scene of the homicide where he discovered a black male slumped over the steering wheel leaning towards the passenger side. *Id*. at 139. He also noticed a vehicle parked across the street from the station wagon with the windows shot out. *Id*. at 142.

Officer Edwin Correa testified he backed up [O]fficer Heggs and first saw Appellant on the 2500 Block of Eighth Street after Mr. Roman directed his attention to Appellant. *Id*. at 150. Officer Correa identified himself as a police officer at which time it appeared to him that Appellant was going to flee. Officer Correa and his partner quickly walked over to Appellant, frisked him for weapons and placed him in their vehicle. *Id*. at 151-52. Appellant repeatedly exclaimed "Oh, God, please forgive me for what I did." *Id*. at 152.

Dr. Ian Hood testified the victim was pronounced dead at 11:50 p.m. N.T., 4/16/03, at 50. Dr. Hood performed an autopsy the next day at which time he observed two gunshot wounds on the victim's body–one entrance wound in his chest

- 3 -

and one exit wound in his back. These wounds caused the victim's death. *Id*. at 49-60.

On April 17, 2003, Appellant was found guilty of [third degree murder, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia] and was sentenced on June 17, 2003. On June 24, 2003, Appellant filed a Post-Sentence Motion which the trial court denied following a hearing on September 9, 2003. On April 28, 2004, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), *pro se*. On October 14, 2004, counsel was appointed and filed an amended PCRA petition. On December 7, 2006, Appellant's appeal rights were reinstated *nunc pro tunc,* and counsel was permitted to withdraw on December 21, 2006. On January 4, 2007, current counsel entered his appearance on behalf of Appellant and filed a Notice of Appeal on January 10, 2007.

*Commonwealth v. Perez*, 76 EDA 2007, 954 A.2d 40 (Pa. Super. filed May 30, 2008) (unpublished memorandum at 2–6) (footnotes omitted). That panel affirmed the judgment of sentence. *Id*. at 10. The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on October 23, 2008. *Commonwealth v. Perez*, 960 A.2d 455 (Pa. 2008). On April 6, 2009, the United States Supreme Court denied Appellant's petition for *certiorari*. *Commonwealth v. Perez*, 556 U.S. 1170 (2009).

On June 24, 2009, Appellant filed a PCRA petition and the court appointed counsel. On June 11, 2013, current counsel filed an amended petition and, on September 3, 2013, the Commonwealth filed a motion to dismiss the petition. After counsel filed a reply to the Commonwealth's motion, on October 1, 2013, the PCRA court filed a dismissal notice pursuant

to Pa.R.Crim.P. 907. On November 8, 2013, Appellant's PCRA petition was dismissed without a hearing. This appeal followed.

Appellant presents the following issues for review:

Is the [A]ppellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing as a result of the ineffective assistance of trial counsel?

A. Is the [A]ppellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing since trial counsel rendered ineffective assistance of counsel when he failed to object to the trial court's failure to give the jury a "no adverse inference" instruction?

B. Is the [A]ppellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing since trial counsel rendered ineffective assistance of counsel when he failed to request the trial court to instruct the jury that prior consistent statements are not substantive evidence?

Appellant's Brief at 4.[1]

Our standard of review of a trial court order granting or denying relief under the PCRA requires us to determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. "The PCRA court's findings will not be disturbed unless there is no support for the

---

[1] In the body of his brief, Appellant presents the additional argument, not included in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, that the PCRA court erred when it denied him the opportunity to present evidence in support of his claims at an evidentiary hearing. Issues that are not set forth in an appellant's statement of matters complained of on appeal are deemed waived. Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Diamond**, 83 A.3d 119, 136 (Pa. 2013).

findings in the certified record." ***Commonwealth v. Lippert***, 85 A.3d 1095, 1100 (Pa. Super. 2014).

A PCRA petitioner alleging ineffectiveness of his counsel will be granted relief only if he is able to prove that "in the circumstances of [his] particular case," the truth-determining process was undermined to the extent "that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The law presumes that counsel was effective, and it is the petitioner's burden to prove the contrary. ***Commonwealth v. Payne***, 794 A.2d 902, 906 (Pa. Super. 2002). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Jones***, 71 A.3d 1061, 1063 (Pa. Super. 2013). To satisfy the prejudice prong, it must be demonstrated that, absent counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Charleston***, 94 A.3d 1012, 1019 (Pa. Super. 2014). If it has not been demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone, and the court need not first decide whether the first and second prongs have been met. ***Commonwealth v. Rainey***, 928 A.2d 215, 224–225 (Pa. 2007) (quoting ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998)).

With this analytical framework in mind, we first consider Appellant's claim that trial counsel was ineffective because he failed to object to the trial court's omission of a no–adverse–inference instruction in its charge to the jury. A no–adverse–inference instruction directs the jurors that they may not draw any derogatory insinuation from a defendant's failure to testify on his own defense, because the defendant has the unqualified right not to take the stand if he so chooses. **Commonwealth v. Stanley**, 830 A.2d 1021, 1022 n.1 (Pa. Super. 2003).

At the close of the trial testimony, the trial court conducted an on–the–record colloquy regarding Appellant's right to testify. Appellant advised the court that he did not intend to testify and that his decision was knowing, voluntary, and intelligent. N.T., 4/16/03, at 80–81. Additionally, following consultation with his counsel, Appellant indicated that he wanted the trial court to include a no–adverse–inference instruction in its charge to the jury. **Id**. at 78–79. Despite Appellant's election that the jury receive the requested instruction, the trial court neglected to do so. Defense counsel did not object to the trial court's dereliction in this regard.

The Pennsylvania Supreme Court has stated that "as a matter of Pennsylvania constitutional law, as under the United States Constitution, criminal defendants in this Commonwealth are entitled to a 'no–adverse–inference' jury instruction, when a timely request is made to the trial court." **Commonwealth v. Lewis**, 598 A.2d 975, 979 (Pa. 1991) (footnote

omitted). The post-*Lewis* development of adverse–inference instruction jurisprudence was delineated by this Court in *Stanley*, 830 A.2d at 1024–1025. The *Stanley* Court dissected a trial court's decision that counsel's failure to request an on–the–record colloquy with regard to the defendant's decision to waive his right to the instruction constituted prejudice *per se,* and it granted the defendant a new trial based upon trial counsel's inactivity. On appeal, the *Stanley* Court determined that resolution of the ineffectiveness claim was steered by *Commonwealth v. Thompson*, 674 A.2d 217 (Pa. 1996), the seminal case concerning the adverse inference issue. *Stanley*, 830 A.2d at 1024.

In *Thompson*, the appellant claimed that his counsel was ineffective because he did not request a no–adverse–inference instruction and did not conduct a colloquy indicating that the right to an instruction was waived. The *Thompson* Court determined that a trilogy of cases, namely, *Lewis*, 598 A.2d 975, *Commonwealth v. Edwards*, 637 A.2d 259 (Pa. 1993), and *Commonwealth v. Howard*, 645 A.2d 1300 (Pa. 1994), offered the following guidance: "[T]he [no–adverse–inference] charge accurately reflects the important legal maxim that silence is not evidence of guilt; the charge is not required; however, once a defendant has expressed a clear intent to either include or exclude the charge, that intent must be carried out." *Thompson*, 674 A.2d at 221. Although ultimately concluding that the petitioner failed to demonstrate that he was prejudiced by counsel's failure

to request the instruction, the **Thompson** Court announced a new prospective rule that "the no adverse inference instruction shall be given absent an *express* on the record colloquy by the defendant waiving the charge." **Id**. at 222 (emphasis in original).

It fell upon the **Stanley** Court, then, to address the consequences of counsel's failure to request a **Thompson** colloquy. For four reasons, the Court rejected the concept that the failure to request the colloquy represented prejudice *per se*: 1) **Thompson** is silent on the appropriate remedy; 2) the Pennsylvania Supreme Court rejected claims of prejudice *per se* where counsel was alleged to be ineffective for failing to ensure that the instruction was provided in **Thompson**, 674 A.2d at 222, and **Howard**, 645 A.2d at 1308, and instead demanded utilization of a particularized finding of prejudice in accordance with the three–pronged ineffectiveness test; 3) the **Thompson** Court ruled that prejudice was not presumed when counsel fails to request a colloquy; and 4) the Supreme Court proclaimed rules of *per se* prejudice in other cases. **See**, **e.g**., **Commonwealth v. Mikell**, 729 A.2d 566, 571 (Pa. 1999) (stating that counsel's inexplicable failure to request alibi instruction constituted constitutionally ineffective assistance of counsel);[2] **Commonwealth v. Persinger**, 615 A.2d 1305, 1308 (Pa. 1992)

_____

[2] Later, in **Commonwealth v. Hawkins**, 894 A.2d 716 (Pa. 2006), the Pennsylvania Supreme Court reviewed its prior decisions on the alibi instruction and observed that those cases have been misinterpreted. The Court explained that failure to request the instruction is not *per se*

(counsel's failure to file motion to withdraw guilty plea when defendant was not informed that his sentences could be imposed consecutively caused manifest injustice). **Stanley**, 830 A.2d at 1026. Reasoning that if the failure to request the underlying instruction is not prejudicial *per se*, then a failure to request a colloquy with respect to waiver of the instruction also cannot constitute prejudice *per se*, the **Stanley** Court held that the standard three-part ineffectiveness test should govern the analysis and remanded for the trial court to make an individualized finding on the prejudice prong. *Id*. at 1027.

In the instant case, Appellant contends that he was denied his state and federal constitutional rights when the trial court failed to give the jury the no–adverse–inference instruction after Appellant specifically indicated that he wanted the instruction. He further argues that there was no reasonable basis for trial counsel's failure to object to the trial court's omission of the instruction in its jury charge. Finally, Appellant urges that he can demonstrate prejudice resulting from trial counsel's actions.

In rejecting Appellant's post–conviction claim that counsel was ineffective for failing to object to the trial court's deficient jury instruction, the PCRA court reiterated the pertinent section of the trial court's charge to the jury:

---

ineffectiveness. Instead, "competent counsel may waive an alibi instruction where counsel has a reasonable basis for doing so." *Id*. at 717.

You will start with the presumption of innocence. That's the first fundamental. The defendant is presumed to be innocent and the mere fact that he was arrested and charged with a crime is not evidence of guilt[]. A defendant is presumed to remain innocent throughout the trial unless and until you conclude, based on a careful and impartial consideration of the evidence, that the Commonwealth has proved him guilty beyond a reasonable doubt. It is not the Defendant's burden to prove that he is innocent. Instead, the Commonwealth always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of that crime that you are considering beyond a reasonable doubt. A person accused of [a] crime is not required to present any evidence or prove anything in his own defense. If the evidence presented fails to meet the Commonwealth's burden, then your verdict must be not guilty. On the other hand, if the evidence does prove beyond a reasonable doubt that this defendant is guilty, then your verdict as to that particular crime must be guilty. N.T. 4/16/2003 @ 115–116.

PCRA Court Opinion, 3/19/14, at 5.

The PCRA court then explained why the trial court's instructions to the jury did not represent an abuse of discretion and why trial counsel's corresponding failure to object to the charge did not constitute ineffective representation:

In the case sub judice, the trial court instructed the jury that Appellant was not required nor expected to present any evidence, and that included Appellant testifying in defense. The trial court reiterated further that it was not Appellant[']s burden to prove his innocence. The instructions give[n to] the jury were sufficient and within the trial court's broad discretion and present an accurate statement of the law. There was no abuse of discretion.

Trial counsel will not be deemed ineffective for failing to pursue a meritless objection to the trial court's jury instructions and he is presumed effective until Appellant proves otherwise. Appellant failed to meet this burden.

- 11 -

> Moreover, Appellant failed to prove that, but for the alleged omission of trial counsel, the outcome of the proceedings would have been different, i.e., prejudice. Appellant was not prejudiced by the cited act of omission. Error was not committed.

*Id*. at 5–6.

Unlike the PCRA court, we find arguable merit in Appellant's underlying claim that he was denied his constitutional rights. While the PCRA court and the Commonwealth posit that the trial court's charge to the jury, as a whole, explained that Appellant was not expected to present any evidence or prove his innocence, *Lewis* explicitly rejected the concept that less specific instructions secure a defendant's constitutional guarantee to remain silent at trial without adverse consequence:

> The entire premise underlying our requirement of the "no-adverse-inference" charge to the jury, under Article I, Section 9, is that the trial judge is vested with an *obligation* to protect the defendant's right to remain silent, free from the insidious danger of adverse inference presented by a jury left free to wander in speculation. Experience teaches us that the very *exercise* of an individual's right not to testify, under Article I, Section 9, may *endanger* that right if the jury is left free to draw negative inferences from the defendant's decision to exercise his or her constitutional privilege. The trial court, being in a unique position to protect a defendant's constitutionally secured right through the jury charge, is the only bulwark to ensure that the exercise of a fundamental right does not turn into an act of constitutional suicide. Having determined in this Commonwealth that a "no-adverse-inference" charge is necessary to secure the guarantees of Article I, Section 9, the judge has either given the charge or he has not. Make-shift substitutes will not suffice. Juries must be told in no uncertain terms that no adverse inference may be drawn from a defendant's failure to take the stand; otherwise, we are left to mere guesswork as to the meaning juries have ascribed to tangentially related words of the

court. In the instant case, it is undisputed that the trial judge failed to give the "no-adverse-inference" charge, after being timely requested to do so by counsel for defendant. Under Article 1, Section 9, a constitutional violation has occurred.

*Lewis*, 598 A.2d at 980 (emphasis in original) (footnotes omitted).

Nor, as urged by the Commonwealth, was the trial court's error in omitting the instruction cured by the *voir dire* and defense counsel's closing argument. Apparently during *voir dire* prospective jurors were asked whether a defendant's decision to remain silent would influence their assessment of Appellant's guilt.[3] Then, in his closing argument, defense counsel reminded the jury of Appellant's presumed innocence:

There was, in fact, the juror who said that he was not able to stay with us because he was concerned about when a defendant on trial doesn't get up on that witness stand and explain himself or present his side of the story. Well, ladies and gentlemen of the jury, his Honor will instruct you that [defendant] is presumed innocent, that he doesn't have to do anything and the Commonwealth still has the burden of proof beyond a reasonable doubt and unless they overcome that burden, you must find him not guilty.

N.T. 4/16/03, 96–97.

Following the principles enunciated in *Lewis,* the Commonwealth cannot present a patchwork quilt of comments to the jury and contend that, stitched together, they were sufficient to safeguard the concept embodied within the no-adverse-inference instruction. The case law teaches instead that once the instruction is requested, the trial court must emphatically

---

[3] The *voir dire* notes of testimony were not included in the appellate record.

- 13 -

include it in its charge to the jury. Accordingly, trial counsel's failure to object to the trial court's instruction was error and would satisfy the requirement that Appellant present a claim of arguable merit. As for a possible reasonable basis for the trial counsel's failure to object to the instruction, we render no opinion in the absence of an evidentiary hearing. "The reasonableness of an attorney's strategic or tactical decisionmaking is a matter that we usually consider only where evidence has been taken on that point." *Commonwealth v. duPont*, 860 A.2d 525, 533 (Pa. Super. 2004) (citing *Commonwelath v. Di Nicola*, 751 A.2d 197, 202 (Pa. Super. 2000)).

The conclusion that Appellant's claim may be meritorious is inconsequential, however, because Appellant has failed to establish the prejudice component of the ineffective assistance of counsel test. We conclude, after review, and in agreement with the PCRA court, that even if a no–adverse–inference instruction was given, there is no reasonable probability that the outcome of the proceedings would have been different.

Appellant insists that he can demonstrate prejudice because the evidence of his guilt was not overwhelming. His defense at trial was that he did not commit the crimes, and he presented no witnesses on his behalf. Appellant surmises that this is a situation where the jury might expect to hear from the defendant, and there is a corresponding viable risk that the jury would draw an adverse inference from Appellant's failure to testify.

- 14 -

We disagree with Appellant's categorization of the evidence as underwhelming. While circumstantial, convincing evidence gleaned from the detailed factual recital in ***Commonwealth v. Perez***, 76 EDA 2007, and our independent review of the record, reveal that Appellant killed the victim.

On the evening of the murder, Shakira Morse, the victim's sister, testified that Appellant twice went to the victim's house, and the victim left the residence shortly after Appellant's second visit. Appellant, the victim, and Levaughn Nesbitt sat in an abandoned car and smoked marijuana. Nesbitt testified that Appellant pulled out a black gun and stated that "he was going to use it." N.T., 4/15/03, at 108. An eyewitness, Ismael Roman, heard a gunshot, then observed Appellant fire two shots. ***Id.*** at 69–73. The police recovered a shell casing in the front passenger seat of the abandoned car where Appellant had been sitting and where the body of the victim was discovered. Two other casings and a gun were found in the vacant lot near the abandoned automobile. ***Id***. at 35–37. Another police officer heard a commotion at Appellant's grandmother's house and observed Appellant walking down the stairs with a "large wound on his head." ***Id***. at 135–136. When Appellant was eventually stopped by the police, he repeatedly exclaimed, "Oh God, please forgive me for what I did." ***Id***. at 152.

In light of this compelling evidence, we conclude that, even if a no–adverse–inference instruction was given, there was no realistic likelihood that the jury would have reached a not guilty verdict. Because Appellant

cannot prove the required prejudice, trial counsel's failure to object to the incomplete instruction cannot be deemed ineffective representation. *Charleston*, 94 A.3d at 1019.

Appellant's second allegation of ineffectiveness concerns trial counsel's failure to request the trial court to instruct the jury that prior consistent statements are not substantive evidence. Under Pennsylvania Rule of Evidence 613(c), consistent statements of a witness are admissible in order to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory, or a prior inconsistent statement which the witness has denied or explained. Pa.R.E. 613(c)(1), (2). The prior consistent statement is received only for rehabilitation and not as substantive evidence. *Commonwealth v. Busanet*, 54 A.3d 35, 66 (Pa. 2012), *cert. denied*, 134 S.Ct. 178 (2013); *Commonwealth v. Baumhammers*, 960 A.2d 59, 89 (Pa. 2008).

The ineffectiveness claim here arises in the context of the testimonies of Nesbitt and Morse concerning Nesbitt's direct trial testimony that he witnessed Appellant pull out a gun while he, the victim, and Appellant were in the abandoned car. On cross–examination, Nesbitt admitted that he did not tell police that Appellant had drawn a gun when Nesbitt was interviewed after the crime. Nesbitt stated that he withheld the gun information initially because he "didn't want to be a snitch and [he] was afraid [he] might get in trouble." N.T., 4/15/03, at 118. In response to this testimony, the

- 16 -

Commonwealth attempted to elicit evidence from Morse that Nesbitt told her the day after the shooting that he had seen Appellant with a gun. *Id*. at 127–128. Defense counsel objected, arguing that the testimony was inadmissible in the absence of an allegation of prior fabrication. The trial court overruled the objection and allowed Morse's testimony because it believed that Nesbitt's cross–examination demonstrated a tendency towards recent fabrication. *Id*. at 128. The trial court, however, did not explain to the jury that Morse's statement was admissible only for Nesbitt's rehabilitation and not as substantive evidence. As with his silence on the court's omission of the no–adverse–inference instruction, trial counsel did not object to the court's failure to explain the limited evidentiary purpose of Morse's recollection of Nesbitt's prior consistent statement.

In denying Appellant's ineffectiveness claim in this regard, the PCRA court determined as follows:

> Appellant has failed to meet his burden of proof. Here, Leva[ug]hn Nesbitt testified at trial that he observed Appellant in possession of a gun while seated in the abandoned station wagon. It was in the province of the jury to weigh Nesbitt's testimony with his admission that he had not initially provided police with that information. The evidence presented here was more than sufficient to sustain the jury's verdict that Appellant is guilty of these crimes and it is unreasonable to conclude that the jury would have come to a different outcome but for the omission of the consistent statement jury instruction. Error was not committed.

PCRA Court Opinion, 3/19/14, at 6–7.

Appellant takes issue with the PCRA's court dismissal of the significance of Nesbitt's testimony. He counters that Nesbitt's statement that he witnessed Appellant with a gun on the night of the murder and uttered an intention to use it was so damning that it was essential that the jury understand that his prior consistent statement about Appellant's gun possession could not be considered substantive evidence.

While Appellant again presents a claim of arguable merit, we concur with the PCRA court's determination that it is not reasonably probable that the jury would have reached a not guilty verdict but for the omission of the consistent statement jury instruction. Although trial counsel should have objected to the trial court's failure to instruct the jury on the circumscribed rehabilitative nature of Morse's testimony, *see Busanet*, 54 A.3d at 66, we conclude that Appellant cannot demonstrate the requisite prejudice arising from this action. We have already decided that significant evidence supports Appellant's conviction. Additionally, even if the jury had understood that Nesbitt's earlier statement was not substantive evidence, there was no limitation on its consideration of Nesbitt's trial testimony that Appellant brandished a gun on the night the crimes occurred as direct evidence of his guilt. The prior consistent statement was thereby cumulative of properly admitted evidence, and counsel cannot be deemed ineffective for failure to object to the missing instruction. *See duPont*, 860 A.2d at 535 (opining

that defendant cannot prove prejudice where challenged evidence was cumulative of properly admitted evidence).

Appellant's inability to demonstrate that he was prejudiced by counsel's alleged ineffectiveness is fatal to his claims. For this reason, we agree with the PCRA court's ruling that Appellant is not entitled to post–conviction relief, and the order denying same will be affirmed.

Order affirmed.

Judge Bowes joins the Opinion.

Judge Ott Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014