J-S41009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY PAUL WHITE, | |
| Appellant | No. 1615 MDA 2016 |

Appeal from the PCRA Order September 1, 2016
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0001280-2012

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED JULY 26, 2017**

Appellant, Anthony Paul White, appeals from the denial of his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, after a hearing. We affirm.

We take the facts of this case from this Court's December 2, 2013 memorandum and our independent review of the certified record:

> On December 10, 2011, a woman, Julie Ann Wolpert, walked to a corner store located at the intersection of College Street and Penn Street in York, Pennsylvania [at approximately 7:30-8:00 p.m.]. (**See** N.T. Trial, 9/10/12, at 76). She observed people on the corner, who did not make her feel "comfortable." (**Id.** at 77). She called a friend, "Will," who picked her up in his vehicle and dropped her off a half-block from her home, located at 315 South Penn Street. She also called her boyfriend, Roy Swaney, to come escort her home. When she got out of the car, she

---

[*] Retired Senior Judge assigned to the Superior Court.

realized a male individual had followed her. [Although she stated she had poor eyesight,] [s]he described the person as a "[t]all black guy, he had all black on, and his eyes [were] piercing[.]" (*Id.* at 84). She stated he also had two gold teeth and a black piece of material on his head. (*See id.* at 85). She met up with Swaney at the rear of the residence, but the man continued to follow them, saying that he wanted them to stop and he wanted to talk to them. (*See id.* at 83). When Wolpert and Swaney got into the house, they closed the door. Swaney went to call 9-1-1 while Wolpert grabbed her cats to remove them from harm's way. The perpetrator then kicked in the door and aimed a silver automatic pistol at Wolpert's cat, but the gun jammed. Another resident of the house, Christopher Armagost, came down the stairs, pushed the man out of the home, and shut the door. From outside, the perpetrator fired multiple shots through the door and windows of the residence, killing Armagost.

On December 12, 2011, Detectives Travis A. Sowers and Jeffrey Spence of the York City Police Department showed a photo line-up to Wolpert and Swaney separately. (*See* N.T. Trial, 9/12/11, at 356-57, 359). The line-up included a picture of [Appellant] and seven other individuals. Both witnesses used a piece of paper to cover up the top portion of each person's head on the line-up because the suspect was wearing a black hoodie or skull cup at the time of the shooting. (*See id.* at 358). Both Wolpert and Swaney positively identified [Appellant] as the shooter. (*See id.* at 357-58). [They also positively identified him at trial. (*See* N.T. Trial, 9/10/12, at 83-84; N.T. Trial, 9/11/12, at 223).]

During the investigation, the investigating officers removed a wooden piece of the door from the home, approximately [nineteen] inches by [eleven] inches, which contained a shoe impression on it. (*See* N.T. Trial, 9/12/12, at 299). Sergeant Daryl Van Kirk analyzed the piece of wood in comparison with two Polo Ralph Lauren boots, size [eight]-and-a-half D, which belonged to [Apellant] and were confiscated at the time of his arrest. (*See id.*). After examining the evidence, Sergeant Van Kirk concluded "that the questioned shoe impression from the door could have been made by the left Polo Ralph Lauren shoe . . . or another shoe with the same characteristics." (*Id.* at 314). The police also seized a set of gold front teeth from [Appellant's] right front pants pocket. (*See id.* at 353). [The investigation

- 2 -

also revealed gunshot residue (GSR) on Appellant's pajama pants, white t-shirt, and left hand; a magazine with bullets found in Appellant's room that matched the manufacturer type and caliber of the casings found at the scene; and video evidence of Appellant walking toward the scene at approximately 8:25 p.m., and away from it at 8:27 p.m. (*See* N.T. Trial, 9/11/12, at 267-75, 283-84; N.T. Trial, 9/12/12, at 314, 328-29, 338-39, 373.)]

[Appellant] was arrested and charged with first-degree murder, second degree murder, third-degree murder, and burglary. On April 19, 2012, [Appellant] filed an omnibus pre-trial motion to suppress, claiming the photo lineup identification was unduly suggestive. A suppression hearing was held on May 29, 2012. That same day, the trial court denied the motion to suppress.

The case proceeded to trial, which was held from September 10, 2012 to September 13, 2012. The jury found [Appellant] guilty of second-degree murder and burglary, and not guilty of first-degree murder and third-degree murder. On October 22, 2012, the court imposed a term of life imprisonment on the murder conviction. . . .

(***Commonwealth v. White***, No. 1962 MDA 2012, unpublished memorandum at \*\*2-4 (Pa. Super. filed Dec. 2, 2013) (footnote omitted; some record citation formatting provided; some record citations provided)).

Appellant timely appealed on November 7, 2012. On April 15, 2013, he filed a *pro se* PCRA petition, which the PCRA court denied as premature. On December 2, 2013, a panel of this Court affirmed Appellant's judgment of sentence. (***See id.*** at \*1). Appellant did not seek review in the Pennsylvania Supreme Court.

Appellant filed a counseled second PCRA petition on December 8, 2014, and an amended petition on January 19, 2016. The court held a

hearing on June 6, 2016, and denied the request for relief on September 1, 2016. Appellant timely appealed on September 28, 2016.[1]

Appellant raises two questions for our review:

> I.     [Whether] [t]he PCRA court erred because the record does not support its prejudice analysis[?] Stated differently, [whether,] in the absence of Julia Wolpert's and Roy Swaney's out-of-court and in-court identifications, the PCRA court can have [any] confidence in [Appellant's] convictions requiring the PCRA court to grant [Appellant] a new trial[?]
>
> II.     [Whether] [t]he PCRA court erred as a matter of law in finding that the facts elicited at trial did not warrant a ***Kloiber***[2] instruction and that [Appellant] was not prejudiced by the absence of a ***Kloiber*** instruction[?]

(Appellant's Brief, at 3) (citations omitted).[3]  Although not phrased as such in the Issues Presented section of Appellant's brief, a review of the argument section reveals that both of his questions challenge the PCRA court's finding

---

[1] Appellant filed a timely statement of errors complained of on appeal on November 19, 2016, pursuant to the PCRA court's order.  ***See*** Pa.R.A.P. 1925(b).  The court filed a statement on November 21, 2016 in which it relied on the reasons stated in its September 1, 2016 opinion to support its decision.  ***See*** Pa.R.A.P. 1925(a).

[2] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954), *cert. denied*, 348 U.S. 875 (1954).

[3] We remind counsel that his statement of questions involved (which he identifies as "Issues Presented") "must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. . . . Each question shall be followed by an answer stating simply whether the court or government unit agreed, disagreed, did not answer, or did not address the question. . . ." Pa.R.A.P. 2116(a).

that trial counsel did not render ineffective assistance. (**See id.** at 3, 33, 36, 52).

> The standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

**Commonwealth v. Taylor**, 933 A.2d 1035, 1040 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1163 (Pa. 2008) (citations omitted).

> A PCRA petitioner alleging ineffectiveness of his counsel will be granted relief only if he is able to prove that "in the circumstances of [his] particular case," the truth-determining process was undermined to the extent "that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.[A.] § 9543(a)(2)(ii). The law presumes that counsel was effective, and it is the petitioner's burden to prove the contrary. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. To satisfy the prejudice prong, it must be demonstrated that, absent counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. . . .

**Commonwealth v. Perez**, 103 A.3d 344, 347-48 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015) (case citations omitted). Further, "[f]ailure to prove any prong of this test will defeat an ineffectiveness claim." **Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014) (citation omitted).

Here, in his first issue, Appellant argues that counsel rendered ineffective assistance because, although he moved to suppress the

December 12, 2011 photo array as being unduly suggestive,[4] he failed to "adequately research the eyewitness identification case law." (Appellant's Brief, at 36; *see id.* at 37-44). Appellant maintains that, had trial counsel argued the theories of "mug shot exposure, non-blind administration, and simultaneous presentation," the court would have suppressed the identifications, and "the outcome of his trial would have come out differently." (*Id.* at 37, 50 (emphasis omitted); *see id.* at 37, 51). This issue is waived and would lack merit.

"When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." *Fears*, *supra* at 804 (internal quotation marks, citations, and footnote omitted). In this case, Appellant utterly fails to discuss, or even mention, the three prongs of the ineffectiveness test, and then apply them to his claim. (*See* Appellant's Brief, at 33-51). Instead, he argues extensively about the scientific theories surrounding eyewitness identification, (*see id.* at 36-44), and then concludes he was prejudiced because, if counsel had argued the theories, then the trial court would have suppressed the identifications, and that there is a reasonable probability the outcome of the trial would have been

_____

[4] On direct appeal, this Court concluded that the trial court properly found that the photo array was not unduly suggestive where "[Appellant's] picture does not standout more than those of the others." (*White*, *supra* at *10).

different. (**See id.** at 50-51). This does not meet Appellant's burden, and his claim is waived. Moreover, it would not merit relief.

As a preliminary matter, we observe that Appellant fails to identify, and our research has failed to reveal, any relevant[5] caselaw in this Commonwealth that either contains the term, "mug shot exposure, non-blind administration, or simultaneous presentation," or holds that trial counsel is ineffective for failing to argue these theories at a suppression hearing. (Appellant's Brief, at 37; **see also id.** at 33-43).[6] Therefore, he

_____

[5] Although the words, "simultaneous presentation" are mentioned in two cases in this Court, they are part of sentences referring to presenting a weapon and a defendant at the same time. **See Commonwealth v. Derrick**, 469 A.2d 1111, 1120 (Pa. Super. 1983); **Commonwealth v. Carter**, 414 A.2d 369, 372 (Pa. Super. 1979).

[6] Appellant cites **State v. Henderson**, 27 A.3d 872 (N.J. 2011), "to demonstrate how easily trial counsel could have researched the various eyewitness identification issues relevant to Wolpert's and Swaney's out-of-court identifications." (Appellant's Brief, at 34). In **Henderson**, the New Jersey Supreme Court discussed the scientific research about human memory and eyewitness misidentification, and revised its legal framework for evaluating eyewitness identifications. **See Henderson**, **supra** at 877-78, 919-21. First, we note that this case is not binding on this Court because it is state authority from another jurisdiction. **See Verdini v. First Nat. Bank of Penn.**, 135 A.3d 616, 619 n.5 (Pa. Super. 2016) ("The decisions of the lower federal courts and other states' courts may provide persuasive, although not binding, authority.") (citations omitted). Moreover, as stated **supra**, there is no legal precedent in Pennsylvania that even mentions the scientific principles of "mug shot exposure, non-blind administration, [or] simultaneous presentation," let alone has adopted them as necessary considerations for eyewitness identifications and the effective representation of counsel. (Appellant's Brief, at 37) (emphasis omitted).

*(Footnote Continued Next Page)*

has failed to meet his burden of proving the merit of his underlying claim, that trial counsel was ineffective for failing to argue these scientific theories to support Appellant's motion to suppress. *See Fears*, *supra* at 804; *Perez*, *supra* at 347-48.

Additionally, our review of the record supports the PCRA court's finding that, even if counsel did fail to research all potential avenues for the suppression of the eyewitnesses' identifications, Appellant cannot establish that he was prejudiced. Specifically, the court observed:

> Aside from Ms. Wolpert and Mr. Swaney identifying [Appellant] as the gunman, the jury also heard the following evidence: (1) evidence demonstrating boots owned by [Appellant], that were confiscated at the time of his arrest, could have matched the shoeprint on the door, which had been kicked in when the gunman had entered the residence[;] (2) evidence that a set of front gold teeth were seized from [Appellant's] right front pants pocket at the time of his arrest[;] (3) testimony from a [GSR] expert that GSR was found on [Appellant's] pajama pants, white t-shirt and left hand[;] (4) testimony that a

*(Footnote Continued)* _____

We acknowledge that, in *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), our Supreme Court cited *Henderson* and, in recognition of the growing scientific literature on the potential fallibility of eyewitness identification, held that "the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible in our Commonwealth," and left "the admissibility of such expert testimony to the discretion of the trial court." *Walker*, *supra* at 792; *see also id.* at 781. However, *Walker* was decided after Appellant's conviction and has no bearing on his case. Moreover, although it acknowledged the growing scientific literature, it did not hold that the effective representation of a client requires arguing such scientific principles, and we decline to so hold now. *See Aivazoglou v. Drever Furnaces*, 613 A.2d 595, 600 (Pa. Super. 1992) (until Supreme Court changes law, "this Court, being an error correcting court, will affirm trial court decisions which are in accord with principles of law adopted by prior appellate court decisions.").

magazine containing six bullets was found in [Appellant's] bedroom at the time of his arrest, which matched the manufacturer type and caliber of the ammunition casings found at the crime scene[;] and (5) video evidence showing [Appellant] walking by Young's store, one block from the location of the murder at 8:25 p.m., heading south in the direction of the murder—then, subsequently, at 8:27 p.m., the video evidence showed [Appellant] walking north, away from the location of the murder, presumably back to his residence. Based on the above evidence, [the PCRA court] believes, aside from [] Ms. Wolpert and Mr. Swaney's identification of [Appellant], there was sufficient evidence to convict [him] of second-degree murder and burglary.

(Trial Court Opinion, 9/01/16, at 10-11) (record citation omitted).

Based on the foregoing, and our independent review, we agree. Therefore, we conclude that the certified record supports the PCRA court's determination that Appellant is unable to meet his burden to plead and prove that he was prejudiced by trial counsel's alleged inaction where it did not affect the outcome of the trial. *See Taylor*, *supra* at 1040; *see also Fears*, *supra* at 804; *Perez*, *supra* at 348. Appellant's first issue would lack merit, even if not waived.

In his second issue, Appellant claims that, "[t]he PCRA court erred as a matter of law in finding that the facts elicited at trial did not warrant a *Kloiber* instruction and . . . . because the record does not support its *Kloiber* prejudice analysis." (Appellant's Brief, at 51). This issue is waived and would not merit relief.

Again, as in his first issue, Appellant fails to meaningfully discuss each of the ineffectiveness prongs. (*See id.* at 51-54). In fact, his question is

not phrased as a claim of ineffective assistance of counsel. (**See id.** at 3, 51). It is not until the second page of his argument on this issue that Appellant mentions that trial counsel was allegedly ineffective for not requesting a **Kloiber** instruction. (**See id.** at 52). Appellant spends the majority of his argument explaining why he believes a **Kloiber** charge was warranted, and then concludes that, had the jury heard that instruction, the outcome of the trial would have been different. (**See id.** at 51-54). Therefore, Appellant's second issue is waived for his failure to provide substantive discussion for each prong of the ineffectiveness test. **See Fears**, **supra** at 814. Moreover, it would not merit relief.

Pursuant to **Kloiber**, **supra**:

. . . [W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

**Kloiber**, **supra** at 826-27.

Here, the PCRA court observed:

[Appellant] contends that his trial counsel was ineffective for failing to request a **Kloiber** instruction with respect to Ms. Wolpert's and Mr. Swaney's testimony indicating both were not in a position to clearly observe the gunman. Ms. Wolpert testified to her very poor eyesight, while Mr. Swaney stated he used heroin on the day of the shooting and only saw the gunman for a "split second."

The citations noted above however are not the complete testimony of the witnesses as to the issue of identification. The

- 10 -

evidence reveals that Ms. Wolpert had ample time to identify the subject following her from the corner store. She described the person as a "[t]all black guy, he had all black on, and his eyes [were] piercing." Additionally, she stated he had two gold teeth and a black piece of material on his head. Further, on December 12, 2011, both [Ms.] Wolpert and Mr. Swaney positively identified [Appellant] as the shooter when both were separately presented with a photo line-up of [Appellant] and seven other individuals. Also, both Ms. Wolpert and Mr. Swaney positively identified [Appellant] during trial. Lastly, Ms. Wolpert and Mr. Swaney's identification of [Appellant] as the shooter never wavered.

Under these circumstances, [the PCRA court] finds a ***Kloiber*** charge was not required. Therefore, because a ***Kloiber*** charge was unwarranted on these facts, counsel could not have been ineffective for failing to raise a meritless issue.

(PCRA Ct. Op., at 15-16) (some record citation formatting provided); ***see Commonwealth v. Sneed***, 45 A.3d 1096, 1115 (Pa. 2012) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.") (citation omitted). We agree.

Our review of the certified record supports the PCRA court's conclusion, and Appellant cannot establish the first prong of the ineffectiveness test.[7] Accordingly, Appellant's second issue would not merit relief, even if it was not waived.

Order affirmed.

---

[7] Moreover, as we stated in our review of Appellant's first issue, the jury had sufficient evidence to convict him without the eyewitness identification. Therefore, he cannot prove that he was prejudiced by counsel's decision not to request a ***Kloiber*** instruction. ***See Fears***, ***supra*** at 804; ***Perez***, ***supra*** at 348.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/26/2017</u>