J-S19042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FRANCIS ANTHONY MILLIARD | : | |
| | : | |
| Appellant | : | No. 1363 WDA 2020 |

Appeal from the PCRA Order Entered November 24, 2020
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000283-2012

BEFORE:  DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: JULY 13, 2021**

Francis Anthony Milliard (Milliard) appeals from the order entered in the Court of Common Pleas of Elk County (PCRA court) dismissing his timely petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Milliard claims that trial counsel was ineffective for failing to object to the Commonwealth's prejudicial remarks during closing argument in his arson trial, as well as failing to request a no-adverse-inference jury charge concerning his decision not to testify in his defense.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] A no-adverse-inference instruction directs the jurors that they may not draw any negative connotation from a defendant's decision not to testify in his own defense because he has the unqualified right not to take the stand.  ***See Commonwealth v. Perez***, 103 A.3d 344, 348 (Pa. Super. 2014).

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. During the early morning hours of May 30, 2012, Milliard and his son, Anthony Milliard (Anthony), went to the home of Michelle Park (Park) to set it on fire. Anthony, acting at Milliard's direction, mistakenly set the residence of a neighbor, Pauline Smith (Smith), on fire instead.

Police learned of Anthony's role in the arson when he was taken into custody on an unrelated matter. When questioned about the Smith fire, Anthony explained during a recorded interview that Milliard woke him up at around 3:00 a.m. and told him to get ready. They left their home in Milliard's blue minivan and Milliard handed Anthony a glass jar filled with gasoline, black gloves and a rag. They parked at a nearby supermarket where Milliard pointed out Park's residence to Anthony and instructed him to light it on fire. While Milliard remained in the minivan, Anthony went in between the Park and Smith houses and poured gasoline on the back of Smith's home, igniting the fire. Anthony returned to the minivan where Milliard was waiting and threw the now-empty glass jar and black gloves out of the window as they drove away. They learned the next day that Anthony lit the Smith residence instead of Park's residence, on fire.

Several witness, including members of Milliard's extended family, recounted that Milliard became very upset after learning that Smith's

residence had caught fire instead of Park's home. Eyewitness testimony from Smith's neighbor, Thomas Prechtl (Prechtl), placed the blue minivan and two men, one older and one younger, in the vicinity at the time of the fire. Prechtl identified Milliard as the driver of the minivan parked at the supermarket.

During closing argument at Milliard's 2016 jury trial, the prosecutor made several remarks that Milliard claims were prejudicial, to which defense counsel lodged no objection. The following excerpts are the challenged comments and their surrounding context:

> In January of 2014 I became the district attorney in Elk County. This case happened on May 30, 2012. In January of 2014 **I began to care about this case**. **I began to care** about what happened at Pauline Smith's house on May 30, 2012. And it was **my hope**, as I appear before you this morning, **that I feel a tenth of the fear** that Pauline Smith felt at 5:24 in the morning of May 30, 2012, when her house filled with smoke and the back of the house was on fire.

> You heard Anthony Milliard come into court here and testify. And I asked him, where did you drop your father off at? Doesn't matter. Ladies and gentlemen of the jury, I would submit to you, it does matter. It matters to Pauline Smith and it matters to **us** as **we** deliberate this case.[2]

> With respect to **your** deliberations, in a short while **you're** going to return to that room— and there's a duty with a jury. . . . When **you're** in that jury room, **you** should not hesitate to use your common sense.

*    *    *

---

[2] Milliard claims that the prosecutor's remarks improperly personalized the case, announced his own opinion and beliefs, and inserted the Commonwealth into the deliberation process. (**See** Millard's Brief, at 12-14).

With respect to the route home, it was the same route home. [Anthony's] testimony as well as prior statements, through Grant Road. There is a glass jar which he had previously said, My father gave me a glass jar and told me, Go light Michelle Park's house on fire. We found **the** glass jar. This is all circumstantial evidence as it relates to the glass jar that in fact Francis Milliard was involved with this fire.[3]

\* \* \*

. . . when [Anthony] was getting ready to write his written statement, Officer [Bridgette] Asti was in the room with him. And Anthony made an acknowledgment that he did wrong, and Bridgette Asti said to Anthony, I know you wouldn't have done this if your father didn't put you up to it. And Anthony did not dispute that.[4]

\* \* \*

Now, it's important that I talk to you about good faith. Corporal Agosti is a professional. He's a **decorated member of the Pennsylvania State Police**. He's experienced. He conducted interviews in this matter of not only Anthony Milliard. It's not like we just had Anthony Milliard saying that his father did this. We have other witnesses.

\* \* \*

Ladies and gentlemen, I would also suggest to you, I could not imagine being deaf, but it's something else when you plug your ears and you rely on your other senses, your sight. I would suggest that you become sharper with your other senses when

---

[3] Milliard claims that use of "the" glass jar instead of "a" glass jar inappropriately bolstered the significance of this evidence because there was no evidence connecting it to the arson. (**See** Milliard's Brief, at 14-15).

[4] The prosecutor was referring to Asti's testimony at trial wherein she stated: "[Anthony] told me that he lit the fire; that he did it for his dad." (N.T. Trial, 9/29/16, at 62). Milliard maintains that the prosecutor inappropriately misstated Asti's testimony during closing. (**See** Milliard's Brief, at 15-16).

you're deprived of your hearing; **that Mr. Prechtl, because of his deafness, is extremely observant with his eyes**.[5]

(N.T. Trial, 9/30/16, at 14-18, 20, 24) (emphases added).

Milliard elected not to testify in his defense. At the close of the testimony, the trial court conducted an on-the-record colloquy regarding Milliard's right to testify. However, during the final charge to the jury, the trial court did not issue a no-adverse-inference instruction and trial counsel did not object to the omission.

The jury convicted Milliard of arson, criminal conspiracy, criminal solicitation, reckless burning, criminal mischief and recklessly endangering another person. On November 18, 2016, the trial court sentenced him to an aggregate term of twenty-six to fifty-seven years' imprisonment. This Court affirmed the judgment of sentence on March 23, 2018. (**See Commonwealth v. Milliard**, 2018 WL 1443024 (Pa. Super. filed March 23, 2018)). Milliard did not seek further direct review.

Milliard, acting *pro se*, filed the instant timely PCRA petition on January 31, 2019, asserting claims of ineffective assistance of counsel later amended by appointed counsel. The PCRA court held a hearing at which trial counsel, Joseph Drew Ryan, Esq., testified.

---

[5] Milliard asserts that police corporal decorations for Corporal Agosti were not of record, nor is there any reference in the trial record to Prechtl's visual capabilities. (**See** Milliard's Brief, at 17-18).

**B.**

At the PCRA hearing, Milliard's counsel outlined the above-quoted comments made by the prosecutor during closing argument and elicited the following testimony from Attorney Ryan:

Q: . . . is there a reason why you would not have objected?

A: Hard to say at this point. I would— I can only assume I didn't catch those things as they were being said, or I didn't find them to be objectionable, or I didn't want to draw more attention to them than the fact that they were already said. But I can't remember specifically.

(N.T. PCRA Hearing, 9/24/19, at 23).

Regarding the lack of no-adverse-inference instruction, Attorney Ryan testified:

Q: . . . Why didn't you request a no-adverse-inference instruction?

A: . . . I can't answer that. I don't know if [Milliard] and I would have spoken about that or not. I know some courts it's automatic, it's being given whether you want it or not. . . . And again, assuming that charge wasn't given, I would— I can— I would like to think [Milliard] and I spoke about it , or if we didn't that I didn't want the negative attention drawn that I think the instruction gives.

Q: Your legal opinion is that the no-adverse-inference instruction causes negative influence on the defendant?

A: It draws— it draws additional attention to the fact that the defendant did not testify, which I think can be viewed negatively. I know the instruction is very clear, you can't take anything adverse from it, but it does draw additional attention to the fact that no testimony was given.

(*Id.* at 25-26).

On November 24, 2020, the PCRA court issued a Memorandum and Order denying Milliard's PCRA petition. The court assessed each of Millard's claims of ineffectiveness and found no merit to them individually or "that they cumulatively diverted the jury's fact-finding in violation of the defendant's constitutional rights." (Trial Court Opinion, 11/24/20, at 9). Milliard timely appealed and he and the PCRA court complied with Rule 1925. *See* Pa.R.A.P. 1925.

## II.

### A.

Milliard's issues on appeal challenge the effectiveness of trial counsel.[6] We begin by noting that we presume counsel has rendered effective assistance. *See Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018). "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Id.* (citation omitted). "If a petitioner fails to prove any of these prongs, his claim fails." *Id.* (citation omitted). "Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course

---

[6] In reviewing a denial of PCRA relief, our standard of review is limited to whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error. *See Commonwealth v. Lopez*, 249 A.3d 993, 998 (Pa. 2021). "The PCRA court's findings and the evidence of record are viewed in the light most favorable to the Commonwealth as the winner before the PCRA court." *Id.* (citation omitted).

of conduct that had some reasonable basis designed to effectuate his client's interests." **Commonwealth v. Selenski**, 228 A.3d 8, 16 (Pa. Super. 2020), *appeal denied*, 240 A.3d 462 (Pa. 2020) (citation omitted). "Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Id.** (citation omitted).

### B.

We first address Milliard's contention that trial counsel was ineffective for failing to object to the comments, quoted above, made by the prosecutor during closing argument. Milliard claims that through making these remarks, the prosecutor offered his personal feelings about the case, spoke as though he were a member of the jury, mischaracterized the evidence of the glass jar, altered the statement of Asti and bolstered the credibility of Corporal Agosti and Prechtl, depriving him of a fair trial.

A prosecutor has considerable latitude in advocating for the Commonwealth, including the right to argue all fair deductions from the evidence, to respond to defense arguments and to engage in a certain degree of oratorical flair. **See Commonwealth v. Judy**, 978 A.2d 1015, 1020, 1027 (Pa. 2009). In order to establish counsel's ineffectiveness based on failure to object to a prosecutor's conduct, a petitioner must demonstrate that the challenged actions "violated a constitutionally or statutorily protected right,

such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process." *Commonwealth v. Koehler*, 36 A.3d 121, 144 (Pa. 2012) (citation omitted). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* (citation omitted). The focus of the inquiry is on the fairness of the defendant's trial, not on the culpability of the prosecutor. *See id.* "The court must evaluate a prosecutor's challenged statement in the context in which it was made." *Commonwealth v. Hanible*, 30 A.3d 426, 464 (Pa. 2011) (citation omitted).

Finally, not every improper statement warrants the granting of a new trial; reversible error occurs only if the unavoidable effect of the remark is to prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence and render a true verdict. *See id.*

In addressing Milliard's claim of ineffective assistance based on counsel's failure to object during the Commonwealth's closing argument, the PCRA court offered the following analysis:

> While [some of the] language in the Dist. Atty.'s closing suggests to the jury that he is personally invested in the case, we do not believe that these statements significantly cross the line of being a disinterested, impartial or fair assessment of the testimony. After all, it is understood that the attorneys are advocating a view which they hope the jurors will adopt in evaluating the evidence. . . . Under the circumstances we agree with trial counsel that the comments were not significantly

objectionable to interrupt the closing and draw more attention to the personal arguments of the Commonwealth's attorney. . . .

* * *

[With regard to the prosecutor's use of the words 'us' and 'we'], immediately after this sentence, the district attorney stated the following: 'With respect to **your** deliberations, in a short while **you're** going to return to that room— and there is a duty with the jury. . . . When **you're** in that jury room, **you** should not hesitate to use **your** common sense.'. . .

Further, it is not uncommon to view the 'team' of players in the courtroom to have a commonality in their pursuit of justice. The judge, jurors, attorneys, witnesses and court staff are all a team with the goal of rendering a just and fair verdict for the interests of justice. Accordingly, we disagree that this minimal reference to 'us' and 'we' bolsters an argument that the jurors were on the 'prosecution team.' . . .

* * *

Petitioner [challenges counsel's] failure to object [to the prosecution's] referring to 'the' glass jar rather than 'a' glass jar with the implication that the glass jar introduced had been proven to be linked to the crimes. In fact, the very next sentence from the prosecutor's closing argument was that 'this is all circumstantial evidence as it relates to the glass jar that in fact Francis Milliard was involved with this fire.' During the testimonial phase of trial defense counsel was able to raise substantial doubt regarding that particular jar or, for that matter, any jar being involved in the crime. The mere reference to 'the' glass jar in the context of the closing argument does not bolster the fact that, circumstantially, the produced jar was suspicious at best.

* * *

The district attorney's closing statement referencing the actual statement made by Officer Asti is clearly an expansion of the recorded statement. The context is, however, the actual context implied by Officer Asti in her testimony. . . . We do not find arguable merit in Petitioner's claim that the jury was intentionally misled by the prosecution's closing. We find, rather, that counsel are allowed a permissible 'oratorical flair' in their

- 10 -

presentation of the facts to support a version of the facts which accomplishes either conviction or acquittal.

\* \* \*

[With regard to the claim regarding Corporal Agosti,] whether [he] is a 'decorated member' of the state police or just a 'member' of the state police is of minor importance as it relates to the truthfulness of his testimony. The more important factor is that the witness has undergone rigorous training at the State Police Academy and has been found to be trustworthy under the circumstances. We did not find arguable merit in the defendant's assertion that this is impermissible bolstering of or vouching for a Commonwealth witness's testimony.

. . . [As to the claim concerning Prechtl as it relates to his purported better vision because of his deafness] the district attorney made no such assertion to the jury in his closing because he couched his statement in the context that 'I would suggest that you become sharper with your senses when you're deprived of your hearing.' In other words, he left it up to the jurors to either accept or reject the concept of enhanced vision by the deaf. We do not find this to be impermissible bolstering of testimony as argued by [Milliard.].

(Trial Ct. Op., at 4-8).

After review of the record, we do not agree with Milliard's contention that these statements by the prosecutor were an invalid mischaracterization of the evidence presented at trial or an improper bolstering of the testimony presented. Rather, we agree with the PCRA court's assessment that the prosecutor's comments were an effort to present the Commonwealth's version of what the evidence established and that some of the remarks were permissible oratorical flair. **See Judy**, **supra** at 1020.

Moreover, to the extent that we could conclude that the statements at issue were improper, we find that they would not require a new trial. Making

a comment that the outcome "matters to **us** as **we** deliberate this case" was minimal and, **when looked at in context**, did not have the unavoidable effect of prejudicing the jurors and forming in their minds a fixed bias and hostility toward Milliard such that they could not fairly weigh the evidence and render a true verdict. **See Hanible**, **supra** at 464. Accordingly, Milliard's claim challenging trial counsel's decision not to object during the Commonwealth's closing argument fails.

**C.**

We next address Milliard's argument that trial counsel was ineffective because he failed to request the trial court to issue a no-adverse-inference jury charge at the conclusion of trial. Milliard maintains that this omission was unfairly prejudicial, especially in light of the series of improper remarks made by the prosecution during closing argument which could only be remedied by issuance of a no-adverse-inference instruction.

In the context of a claim that trial counsel was ineffective for failing to request an instruction, because the charge is not required to be given automatically when the defendant chooses not to testify, prejudice is not presumed, *i.e.*, it is not *per se* prejudicial. **See Commonwealth v. Stanley**, 830 A.2d 1021, 1026 (Pa. Super. 2003). Therefore, the standard three-prong ineffectiveness test governs our analysis. **See id.**

We first note that although the trial court did not issue a no-adverse-inference instruction in its closing charge to the jury, it did thoroughly instruct

the jury at the beginning of trial that the Commonwealth has the burden of proof. (*See* N.T. Trial, 9/28/16, at 9). It emphasized that:

> . . . the most essential and pivotal rule of our system of law . . . is that a defendant in a criminal case is presumed to be innocent. So Mr. Milliard sits over here cloaked as they say, with this presumption of innocence, and he doesn't have any burden to demonstrate that he is not guilty. That is not his responsibility. So he is not obligated to present any evidence. **He's not obligated to testify himself. In fact, he has an absolute right to remain silent, and you cannot consider that fact if he chooses to exercise that right in any way in your deliberations**.

(*Id.* at 8-9) (emphasis added).

In its closing charge to the jury, the trial court reiterated that the Commonwealth has the burden of proof, that the defendant carries with him the presumption of innocence throughout trial, and that Milliard "is not required to present evidence or prove anything in his own behalf." (N.T. Trial, 9/30/16, at 28; *see id.* at 27).

Although not specifically presented as a no-adverse-inference charge, the record reflects that the trial court specifically advised the jury that Milliard had the absolute right not to testify and that it could not consider his exercise of that right in any way during its deliberations. It is well-settled that the jury is presumed to follow the court's instructions. *See Commonwealth v. Webb*, 236 A.3d 1170, 1179 (Pa. Super. 2020).

Additionally, Attorney Ryan testified at the PCRA hearing that a no-adverse-inference instruction can have the negative effect of drawing focus to the fact the defendant did not testify. (*See* N.T. PCRA Hearing, at 25-26).

The instruction can, therefore, be omitted as a matter of trial strategy. ***See Selenski***, ***supra*** at 16.

Based on the foregoing, we agree with the PCRA court's conclusion that Milliard has failed to establish that he was prejudiced by counsel's failure to request a no-adverse-inference instruction in the closing jury charge. (***See*** Trial Ct. Op. at 8-9). Accordingly, Milliard's claim that counsel was ineffective on this basis merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021