J. A21041/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   :          PENNSYLVANIA
             v.                 :
                                   :
ALVIN BANKS,                :          No. 317 EDA 2019
                                   :
           Appellant    :

Appeal from the PCRA Order Entered January 16, 2019,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006388-2012

BEFORE: LAZARUS, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED NOVEMBER 16, 2020**

Alvin Banks appeals the January 16, 2019 order, entered in the Court of

Common Pleas of Philadelphia County, dismissing his first petition filed

pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful review, we

affirm.

We take the underlying facts and procedural history in this matter from

our decision on direct appeal, and the PCRA court's December 31, 2019

opinion.

> On May 12, 2012, at around 10:30 p.m.,
> Lacey Walerski, one of the complainants,
> walked to the Copper Clover, a
> neighborhood bar in Port Richmond.
> There, Ms. Walerski met her boyfriend,
> John Buettler, and they left together
> shortly thereafter.  As the pair was

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

walking home, they stopped at the corner of Agate Street and Allegheny Avenue, a well-lighted place across the street from Northeastern Hospital. As Ms. Walerski was saying goodnight to Mr. Buettler, an old, red pick-up truck equipped with a ladder rack drove up and stopped nearby. [Appellant] approached with a gun, placed it to Ms. Walerski's head, and forced her and her companion to the ground. Ms. Walerski noticed that [appellant] had a distinctive limp as he walked. [Appellant] demanded that she "give up all [her] shit". He took her earrings, cellular telephone, and handbag. [Appellant] then pointed the gun at Mr. Buettler's head, threatened to kill him, and demanded his belongings. [Appellant] stole Mr. Buettler's wallet, cellular telephone, and sneakers. [Appellant] ordered Ms. Walerski and Mr. Buettler to count to 100 and not look at him. As [appellant] approached the truck, Ms. Walerski noticed another man standing next to the driver's side door. The two men entered the truck and drove away.

After the assailants fled, Ms. Walerski and Mr. Buettler ran into Allegheny Avenue and flagged down a police cruiser. Ms. Walerski was visibly shaken and told the officers the details of the robbery, including a description of the truck and attackers. Ms. Walerski and Mr. Buettler were driven to the police station, and eventually were taken to another location where they positively identified [appellant] and the driver, later identified as Tracey Marrow (a.k.a. Yusef Johnson)[.]

At 11:45 p.m. on May 12, 2012, Philadelphia Police Officer Michael

Szelagowski was on routine patrol when he received a report of a robbery nearby. Moments later, Officer Szelagowski observed Ms. Walerski and Mr. Buettler screaming for help. Ms. Walerski was "petrified, shaking, [and] very nervous." Mr. Buettler was coherent, and did not appear intoxicated.

Police Officer Danny Wright was also on patrol that evening when he received a report of a gun-point robbery where the assailants had fled in a red truck with ladder racks. Approximately thirty to forty minutes after the report, Officer Wright observed a red truck disregard a stop sign. Officer Wright activated his cruiser's lights and siren, but the suspect vehicle did not stop for two blocks. As the truck pulled over, the passenger alighted and fled on foot. Officer Wright arrested the driver, who was subsequently identified as [appellant]. The passenger, Marrow, was later arrested by Officer William Nagy and a 9 millimeter-styled BB gun was recovered. During Officer Nagy's pursuit of the [sic] Marrow, the suspect did not have a limp. Officers also recovered Ms. Walerski's and Mr. Buettler's personal items from [appellant], the red truck, and Marrow.

Detective James Weiss headed the robbery investigation. He interviewed both Ms. Walerski and Mr. Buettler, the officers involved, and prepared the arrest report for [appellant]. In the report when describing the post-incident identification of the assailants, Detective Weiss testified that he transposed the names of the suspects. The report incorrectly indicated Marrow was the perpetrator of the robbery, while [appellant] was the

getaway driver. This transposition was contrary to the witnesses' statements and the testimony at trial, and was merely a scrivener's error.

Finally, Police Officer Eric Pross testified that he was at the courthouse for another matter during [appellant's] trial. Officer Pross observed [appellant] in the hallway outside the courtroom for approximately twenty minutes and testified that [appellant] had an "obvious" limp.

Trial [c]ourt [o]pinion, 02/24/2015 at 2-4 (citations and footnotes omitted).

Following a three-day trial, [appellant] was found guilty [of two counts of robbery, conspiracy, and possessing an instrument of crime.][2] *See* N.T. 2/28/14 at 13. Following sentencing,[3] [appellant] filed a timely post-sentence motion, which was denied by operation of law on September 3, 2014.

*Commonwealth v. Banks*, 2015 WL 6675503 at \*\*1-2 (Pa.Super. Aug. 21, 2015) (unpublished memorandum).

This court affirmed the judgment of sentence on August 21, 2015. *See id.* On February 29, 2016, the Supreme Court of Pennsylvania denied appellant's request for leave to appeal. *Commonwealth v. Banks*, 132 A.3d 456 (Pa. 2016) (parallel citation omitted).

---

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, and 907(a), respectively.

[3] The trial court sentenced appellant to an aggregate term of 10 to 30 years' imprisonment.

On August 29, 2016, appellant filed the instant, timely PCRA petition. The PCRA court appointed counsel, who filed an amended petition on March 16, 2018. On June 14, 2018, counsel filed a supplemental amended PCRA petition. On November 20, 2018, the Commonwealth filed a motion to dismiss. Following oral arguments, the PCRA court filed a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. On January 16, 2019, the PCRA court denied the petition; the instant, timely appeal followed.[4]

On appeal, appellant raises the following issues for our review:[5]

> [1.] Whether the Commonwealth committed prosecutorial misconduct by allowing false testimony to be presented at trial[?]
>
> [2.] Whether the court erred in not granting relief on the PCRA [p]etition alleging counsel was ineffective[?]
>
> [3.] Whether the court erred in denying the [a]ppellant's PCRA [p]etition without an evidentiary hearing on the issues raised in the amended PCRA [p]etition regarding trial counsel's ineffectiveness[?]

Appellant's brief at 9.

Appellant appeals from the denial of his PCRA petition. Our standard of review is settled. We review the denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether

---

[4] In response to the PCRA court's order, appellant filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 31, 2019, the PCRA court issued an opinion.

[5] For ease of disposition, we have reordered the issues in appellant's brief.

its order is otherwise free of legal error. *See Commonwealth v. Faulk*, 21 A.3d 1196, 1199 (Pa.Super. 2011). To be eligible for relief pursuant to the PCRA, appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). *See* 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction [sic] proceeding." 42 Pa.C.S.A. § 9544(b). Further,

> . . . a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion.
>
> > [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citations omitted).

In his first claim, appellant contends the assistant district attorney committed misconduct by allowing several Commonwealth witnesses to provide false testimony. (Appellant's brief at 20-25.) However, appellant waived this claim. *See* 42 Pa.C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction [sic] proceeding."). We note, generally, claims of trial prosecutorial misconduct, other than those enumerated in 42 Pa.C.S.A. § 9543(a)(2)(i-viii), are not cognizable under the PCRA. Here, appellant could have raised his claims of prosecutorial misconduct on direct appeal, but he failed to do so. Accordingly, we need not address appellant's first issue further.

In his second issue, appellant contends he received ineffective assistance of trial counsel. (Appellant's brief at 25-34.) Specifically, appellant maintains trial counsel: (1) requested an improper jury instruction (*id.* at 25-26); (2) wrongly advised appellant not to testify (*id.* at 26-29); (3) failed to object to a surprise witness (*id.* at 29-30); (4) failed to investigate and call a potential defense witness (*id.* at 30-31); (5) failed to litigate a motion to suppress and to request a charge pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954) (parallel citation omitted); (appellant's brief at 30-34). Our standard of review is long settled:

> With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the

petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. Our review of counsel's performance must be highly deferential. To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, [a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first.

*Commonwealth v. Brown*, 196 A.3d 130, 150-151 (Pa. 2018) (citations, internal citations, parallel citations, and quotation marks omitted).

Appellant's first ineffective assistance of counsel contention is trial counsel was ineffective for requesting the trial court instruct the jury appellant's co-defendant entered a guilty plea. (Appellant's brief at 25-26.) Appellant maintains because he was charged with conspiracy, this allowed the jury to infer appellant was guilty of conspiracy. (*Id.* at 25.) We disagree.

The record reflects appellant and his co-defendant Marrow were going to be tried together, and Marrow was present during jury selection. (PCRA court opinion, 12/31/19 at 8.) Marrow pleaded guilty prior to opening statements. (*Id.*) Thus, the trial court believed there needed to be some explanation to the jury concerning Marrow's disappearance from the proceedings. (*Id.*) During a discussion with counsel, appellant's counsel stated the following:

> I think just be honest with them. Tell them that Mr. Marrow has entered a plea in this case and won't be going to trial, and my client will.
>
> . . . .
>
> [] It in no way implies my client's guilt, and they shouldn't consider that at all with respect to him.

Notes of testimony, 2/26/14 at 4. In accordance with this suggestion, prior to opening statements, the trial court instructed the jury thusly:

> I want to tell you something, that yesterday there were two defendants here. The other defendant was Tracey Marrow. He has pled guilty. In no way does that imply anything about [appellant's] guilty [sic], the defendant who is before you, and is not to be considered in any way as to [appellant]. And I want to make that clear at the beginning and explain why we have one defendant at this point for trial.

*Id.* at 8-9. Further, in its closing instructions to the jury with respect to conspiracy, the trial court stated:

> A defendant cannot be convicted because he or she was present with others or even because he or she knew what the other or others planned or were doing. There must be proof of an agreement between the

> defendant and another person or persons to form or continue a conspiracy.
>
> To be proved guilty of being a conspirator, the defendant must have intended to act jointly with the other charge and must have intended that the crime alleged to be the goal of the conspiracy would be committed.

Notes of testimony, 2/27/14 at 72.

Initially, we note while appellant complains about this approach to the problem of explaining his co-defendant's sudden absence from the proceedings (*see* appellant's brief at 25-26), he fails to offer any alternatives. (*See id.*) Further, counsel's trial strategy was to show Marrow acted alone in committing the robbery, and appellant was unaware of what he intended to do. (*See* notes of testimony, 2/24/14 at 26-27; 2/27/14 at 18.) The fact Marrow pleaded guilty to the crimes and the jury was aware of the fact aided in this strategy. Also, the trial court's instructions, quoted above, clearly informed the jury they were not to consider Marrow's guilty plea against appellant, and appellant's mere presence with Marrow was insufficient to convict him of conspiracy. It is settled, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Leap*, 222 A.3d 386, 392 (Pa.Super. 2019) (citation omitted), *appeal denied*, 233 A.3d 677 (Pa. 2020). Appellant has pointed to nothing which would indicate the jury did not follow these instructions and has utterly failed to show counsel's decision prejudiced him. Thus, this claim does not merit relief. *See Brown*, *supra* at 150-151.

In his second contention of ineffective assistance of trial counsel, appellant argues counsel was ineffective for advising him not to testify. (Appellant's brief at 26-29.)  Appellant's argument on this issue consists largely of a precis of what he would have testified to if called.  (*Id.* at 27-28.) Appellant fails to discuss what specific advice counsel gave him about not testifying and merely baldly states, "had the jury been allowed to hear from himself [sic], it would have been sufficient enough to exonerate him."  (*Id.* at 29.)

This claim is belied by the record.  The trial court conducted a colloquy with appellant on the record concerning his right to testify.  Appellant stated under oath he discussed his right to testify with his trial counsel and he had made his own decision to assert his Fifth Amendment right not to testify. (Notes of testimony, 2/27/14 at 2-4.)  The trial court advised appellant he had an absolute right to testify, and appellant said he understood.  (*Id.* at 3-4.) The trial court specifically asked appellant if he had been threatened or coerced into making the decision not to testify and whether he was making the decision of his own free will. (*Id.*)  Appellant responded that he was not being coerced and was making the decision of his own free will.  (*Id.*)  "It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify."  **Commonwealth v. Lawson**, 762 A.2d 753, 755 (Pa.Super. 2000) (citations omitted), **appeal denied**, 781 A.2d 141 (Pa.

2001) (parallel citation omitted). As shown by the above, appellant was colloquied on the record and made a knowing, voluntary, and intelligent waiver. Appellant's claim fails.

In his third contention, appellant argues counsel was ineffective for not objecting to the testimony of Commonwealth witness, Police Officer Erik Pross. (Appellant's brief at 29-30.) In its opinion, the PCRA court described the circumstances underlying Officer Pross' testimony thusly:

> At the close of the Commonwealth's case Officer Pross was called to testify. Officer Pross testified that on the previous day, February 25, 2019, he been [sic] in the hallway outside the Courtroom regarding another matter and during this time he observed the appellant walking up and down the hallway for approximately twenty minutes and that during the entire time the appellant was walking with "an obvious limp." On cross-examination, Officer Pross stated that the assistant district attorney approached him that day and asked if he had seen the appellant walking the day before with a limp. He further testified that he was not told by the assistant district attorney that other witnesses testified that the appellant walked with a limp. During Officer Pross' testimony, the appellant made a request to demonstrate his walk before the jury which was granted by this Court. Appellant rose from [the] counsel table and did a demonstration of his walk in view of the jury.

PCRA court opinion, 12/31/19 at 12-13 (record citations omitted); ***see also*** notes of testimony, 2/26/14 at 152-156.

Appellant contends counsel should have objected on the basis this witness was not on the Commonwealth's witness list, and had appellant known in advance about this testimony, he would have been able to hire a

- 12 -

"medical expert" to prove he did not limp.[6] (Appellant's brief at 30.) We disagree.

The Pennsylvania Rules of Criminal Procedure provide, in pertinent part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

---

[6] We note appellant did not attach, to his amended PCRA petition or his supplemental PCRA petition, the names of any medical experts willing to testify on his behalf and/or any medical records which would substantiate his claim.

(d)    the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e)    any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f)    any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g)    the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

(2)    *Discretionary With the Court.*

(a)    In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i)    the names and addresses of eyewitnesses;

- 14 -

(ii) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; and

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

Pa.R.Crim.P. 573(B)(1) and (2).

Thus, the disclosure of the names of the Commonwealth's witnesses is not mandatory, nor was Officer Pross' testimony exculpatory. Moreover, appellant has not claimed he made a pre-trial request for the Commonwealth's witness list. Thus, the Commonwealth was not required to turn over his name to the defense. *See Commonwealth v. Woodell*, 496 A.2d 1210, 1212-1213 (Pa.Super. 1985) (reversing grant of sanctions on Commonwealth for failing to disclose various information, including witness list, where

evidence was not exculpatory, disclosure was not mandatory, and defense failed to make specific pre-trial discovery request). Thus, there was no basis for counsel to object to Officer Pross' testimony on this ground. We will not fault counsel for failing to make a frivolous objection. **See Commonwealth v. Perez**, 103 A.3d 344, 350 (Pa.Super. 2014), **appeal denied**, 116 A.3d 604 (Pa. 2015) (parallel citation omitted). This claim lacks merit.

In his fourth contention, appellant contends trial counsel was ineffective for failing to investigate and call potential defense witness Lenora Smith. (Appellant's brief at 30-31.) Appellant states, without explanation, Smith was in possession of the clothing appellant wore on the night he was arrested and this would show, "the identification of the clothing worn by the assailant was not the clothing of [a]ppellant."[7] (**Id.** at 30.)

> To prove that trial counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for

---

[7] Appellant's explanation of the nature of Smith's testimony has not been consistent. In his original, **pro se** PCRA petition, he stated she would testify she was the owner of the truck used on the night of the robbery, she never allowed co-defendant Marrow to drive it, and appellant did not have a limp. (**Pro se** PCRA petition, 8/29/16 at 10-11.) While appellant claimed to have attached to the petition a letter from Smith, it is not contained in the certified record. (**Id.** at 10.) In his amended PCRA petition, he abandoned this claim and, instead, advanced the clothing claim, summarized above. (Amended PCRA petition, 12/13/17 at 23.) Appellant did not attach to this petition a witness statement from Smith.

> the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Brown*, *supra* at 167 (citation omitted).

Here, appellant did not attach any witness certification from Leonora Smith to either his PCRA, amended PCRA petition, or supplemental PCRA petition, did not delineate how she came to be in possession of this clothing or how its appearance would contradict the witnesses' testimony, did not state that she would testify at a PCRA hearing, and did not indicate she was ready and willing to testify at trial. These omissions are fatal to his claim. *See* Pa.R.Crim.P. 902(A)(15); *Brown*, *supra*. This claim fails.

In his fifth contention, appellant maintains counsel was ineffective for failing to file a motion to suppress challenging both the stop of the vehicle and the identification by the victims, and for failing to request the jury be charged pursuant to *Commonwealth v. Kloiber*, *supra*. (Appellant's brief at 31-34.) These arguments lack merit.

Appellant argues counsel was ineffective for failing to file a motion to suppress because the police improperly stopped his vehicle. (Appellant's brief at 31.) Appellant claims, without citation to the record, the vehicle he was driving did not match the description of the vehicle used in the robbery and he did not run a stop sign. (*Id.*)

Initially, we note the uncontradicted trial testimony of Officer Danny Wright, who was on routine patrol when he heard a radio report about

the robbery. Approximately 30-40 minutes later, he observed a vehicle, which matched the description of the vehicle used in the robbery, run a stop light. (Notes of testimony, 2/26/14 at 88-89.) This was sufficient to permit the police to make an investigatory stop of the vehicle. *See Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa.Super. 2017 ("Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense."); *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa.Super. 2011) (holding there is no "dispute[] that the vehicle in question was subject to a valid stop as a result of a [] violation of the Pennsylvania Motor Vehicle Code."), *appeal denied*, 25 A.3d 328 (Pa. 2011) (parallel citation omitted). Thus, counsel had no basis to move to suppress the motor vehicle stop.

Moreover, appellant does not identify any evidence which was allegedly obtained in violation of his Fourth Amendment rights. (Appellant's brief at 31.) He appears to be under the mistaken belief that a successful suppression motion would have ended the prosecution. However,

> the United States Supreme Court has ruled that an illegal arrest, without more, has never been viewed as a bar to a subsequent prosecution nor as a defense to a valid conviction. A person is not a suppressible fruit and any illegality of detention cannot deprive the government of the opportunity to prove guilt through the introduction of evidence wholly untainted by the police misconduct. The Pennsylvania Supreme Court has also held that an appellant cannot seek the suppression of his very person.

***Commonwealth v. Standen***, 675 A.2d 1273, 1276 (Pa.Super. 1996) (citations omitted), ***appeal denied***, 685 A.2d 545 (Pa. 1996) (parallel citation omitted).  An illegal arrest also does not provide a basis for suppressing a witness's in-court identification of a defendant, so long as the witness, such as the witnesses in the instant matter, had an independent basis for the identification.  ***Commonwealth v. Santiago***, 209 A.3d 912, 929 (Pa. 2019).  Thus, as appellant has failed to show he was prejudiced by counsel's failure to file a motion to suppress the automobile stop, this claim fails.  ***Brown***, 106 A.3d 150-151.

Appellant also claims counsel should have moved to suppress the identifications as unduly suggestive.  (Appellant's brief at 32-33.)  He argues the victims could not have identified him because they were lying on the ground during the robbery.  (***Id.*** at 32.)  He further claims the post-arrest show-up was unduly suggestive.  (***Id.*** 32-33.)

The PCRA court disposed of this claim as follows:

> In Pennsylvania, whether a defendant is entitled to a pre-trial suppression of an identification as unduly suggestive and therefore violate of due process is determined by evaluating the totality of the circumstances. ***Commonwealth v. Pierce***, 786 A.2d 203, 217 (Pa. 2001)[, ***abrogated on other grounds by Commonwealth v. Grant***, 813 A.2d 726 (Pa. 2002)].  The following factors are to be considered in determining the admissibility of identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation and the time

> between the crime and the confrontation.["] ***Commonwealth v. Moye***, 836 A.2d 973, 976 (Pa.Super[.] 2003)[, ***appeal denied***, 851 A.2d 142 (Pa. 2004) (parallel citation omitted)]. Further, our Supreme Court has held that an on[-]scene identification made shortly after the occurrence of a crime does not offend a suspect's due process rights but rather enhances the reliability of the identification. ***Commonwealth v. Turner***, 314 A.2d 496, 498-499 (Pa. 1974).
>
> Appellant argues that the complainants did not have an opportunity to view the appellant during the robbery as they were forced to lay "face down." However, Ms. Walerski testified that she was able to see the appellant's face during the robbery. She testified that he was wearing a white tee and walked with a limp. She also described the appellant and the truck he used to get away following the robbery. When taken to the location where appellant was stopped she positively identified both the truck and the appellant who was still wearing the white tee shirt.
>
> As such, given the totality of the circumstances, including Ms. Walerski's observation of the appellant's face and white tee shirt, his limp, the truck he fled in and her identification of the appellant less than one hour after the robbery support the conclusion that there would have been no legal basis to support suppressing the victims' out-of-court identifications of the appellant. Therefore, counsel cannot be found to be ineffective for failing to pursue a meritless motion to suppress identification.

PCRA court opinion, 12/31/19 at 16-17 (record citations omitted).

We have thoroughly reviewed both the law and the record and see no basis for disturbing the PCRA court's finding with respect to this issue. We cannot fault counsel for failing to file a baseless motion. ***See Perez***, 103 A.3d at 350.

In his last contention of ineffective assistance of counsel, appellant argues counsel was ineffective for failing to request a *Kloiber* charge. (Appellant's brief at 34.) Appellant never explains the basis for his belief he was entitled to a *Kloiber* charge. (*See id.*)

A *Kloiber* charge is "appropriate 'where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." *Commonwealth v. Reid*, 99 A.3d 427, 448 (Pa.Super. 2014) (interior quotation marks omitted).

Here, the PCRA court addressed this issue in the following manner:

> . . . the witnesses had an opportunity to view the appellant during the commission of the robbery and provided an accurate description and never equivocated on these identifications. Although appellant suggests that they did not have an opportunity to see him as they were told to lay on the ground, both victims had an opportunity to see the appellant during file robbery and unequivocally identified him within a half hour of the robbery and at trial. Therefore, had counsel requested that [the trial c]ourt provide the jury with a *Kloiber* instruction [it] would have likely denied this request.

PCRA court opinion, 12/31/19 at 18.

Appellant does not point to anything in the record which would have supported a request for a *Kloiber* charge, and we see nothing in our review of the record which demonstrates the witnesses equivocated in any way in their identification of appellant. We will not fault counsel for failing to make an unwarranted request for a jury charge. *See Commonwealth v. Upshur*,

764 A.2d 69, 77 (Pa.Super. 2000) (holding defendant not entitled to **Kloiber** charge where eyewitness "had an unobstructed view of [Upshur] . . . lit by a streetlight, at a distance of three feet and has consistently identified [him] as the shooter throughout the investigation"), **appeal dismissed as improvidently granted**, 782 A.2d 538 (Pa. 2001) (parallel citation omitted); **see also Perez**, 103 A.3d at 350; **Reid**, 99 A.3d at 488.

In his third and final claim, appellant alleges the PCRA court erred in dismissing his petition without an evidentiary hearing. (Appellant's brief at 19-20.) We disagree.

The Pennsylvania Rules of Criminal Procedure provide the PCRA court with the discretion to dismiss a PCRA petition without an evidentiary hearing if it is patently without merit. **See** Pa.R.Crim.P. 907. Because, for the reasons discussed above, appellant's ineffective assistance of counsel claims lack merit and his prosecutorial misconduct claim is procedurally barred, he was not entitled to an evidentiary hearing. **See Miller**, **supra** at 992. Accordingly, appellant's third and final claim must fail.

As appellant's claims are meritless, we affirm the denial of his PCRA petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/20